McMAHAN v. CITY OF ABILENE.*
(No. 1640.)

(Court of Civil Appeals of Texas. El Paso.
April 24, 1924. Rehearing Denied
May 8, 1924.)

1. Evidence ☞8 — Common knowledge that dams, especially earthen dams, frequently give way.

It is common knowledge that dams, especially earthen dams, frequently give way.

2. Nuisance ☞50(4)—Measure of damages for permanent nuisance.

When a nuisance is permanent, the measure of damages is the resulting depreciation in the value of property.

On Motion for Rehearing and to Certify.

3. Nuisance ☞4—Earthen dam held a nuisance.

Petition averring construction of earthen dam was annoyance and detriment to plaintiff and his family, that they lived in continual fear of their lives and property, that leakage existed which might cause dam to break, and that these facts depreciated value of plaintiff's land in designated sum, held to state cause of action in damages for erection of nuisance.

4. Courts ☞247(7)—Decision of Court of Civil Appeals on appeal from county court not certified because of conflict of decision.

In case of conflict of decision on appeal from county court, judgment of Court of Civil Appeals is not final in view of Acts 38th Leg. (1923) c. 56, and in such case the Supreme Court having jurisdiction upon application for writ of error under Vernon's Ann. Civ. St. Supp. 1918, art. 1521, the case will not be certified because of alleged conflict.

Appeal from Taylor County Court; Bruce E. Oliver, Special Judge.

Suit by D. McMahan against City of Abilene. From a judgment of dismissal plaintiff appeals. Reversed and remanded.

Kirby, King & Overshiner, of Abilene, for appellant.

Davidson & Hickman, of Abilene, for appellee.

HIGGINS, J. Appellant brought this suit against the city of Abilene to recover damages. Exceptions to the petition were sustained, and the suit dismissed.

In substance the petition alleged that plaintiff was the owner of a tract of land on Elm creek upon which he had resided for many years; that his residence, outhouses, garden, etc., were situated in the valley of the creek upon the land and above the ordinary overflow of the creek, and he and his family were entitled to occupy and enjoy the premises in peace and contentment, free from the annoyances and inconveniences caused by the defendant, as hereinafter stated;

that he and his family had used and occupied the land for many years free from such annoyances, etc.; that on or about May 26, 1921, the defendant constructed a great earthen dam across Elm creek about four miles above plaintiff's land, the dam being about one mile long, upwards of 60 feet high, whereby defendant impounded several billion gallons of water; that the creek is a small stream ordinarily less than 30 feet wide and the low lying land near its banks sufficient to carry the ordinary flow and overflow waters of the stream; that the erection of such dam by the defendant was an unreasonable use of its property, unlawful, and an annoyance, hurt, and detriment to plaintiff, and decreased the value of his property in this, that, should the dam break, which is always a possibility and probable contingency with earthen dams, a vast volume of water would be suddenly released and flow down the valley and inundate all of the low lying land and premises of plaintiff including the land upon which the residence and other improvements were situate, and such residence and improvements be thereby destroyed and the safety of plaintiff and his family and their lives imperiled; that shortly after the construction of the dam it sprung a leak which rapidly grew, and the dam would have been swept away but for a providential caving which stopped the leak; that the construction of the dam was a hurt, annoyance, and detriment to the plaintiff and his family, diminished the value of his land, and is a private nuisance as to plaintiff; that after the construction of the dam plaintiff and his family occupied his home in continual fear, especially after the dam sprung a leak, fearing for their lives and property from inundation of the premises by the breaking of the dam, and there is even now a leakage and seepage from the dam which ultimately may cause it to break and flood plaintiff's land, and that his home is thereby rendered less desirable; he and his family have suffered annoyance and inconvenience and his land thereby diminished in value; that plaintiff abated such nuisance in so far as he could by removing his residence, barn, outhouses, and fences to higher ground above the danger of overflow from breaking of the dam and constructed new improvements on the higher ground; and that he was entitled to recover the reasonable and necessary expenses incurred by him in so moving and reconstructing his improvements, the cost of which was alleged to be $1,000, and was itemized. He further alleged that if he should be mistaken in the measure of his damage, and it was held that the construction of the dam is a permanent nuisance, then in the alternative he alleged a depreciation in the value of his land in the sum of $1,000, caused by the construction

of the dam. Judgment was prayed for his damage aforesaid.

[1] It is a matter of common knowledge that dams frequently give way—especially earthen dams. When large bodies of impounded waters are thus released, they carry death and destruction of property in their wake. To those living in the valley below the impounded waters they are an ever present impending danger to their lives and property. To parties thus situate, we think, under the authorities, it is clear a nuisance is created, and when a property damage results a cause of action for damages arises. Comminge v. Stevenson, 76 Tex. 642, 13 S. W. 556; Railway v. Hall, 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42; Burditt v. Swenson, 17 Tex. 489, 67 Am. Dec. 665.

[2] The petition does not disclose the purpose for which the city of Abilene impounded the water, but it must have been for some public use and the nuisance for this reason not subject to abatement. Furthermore, in its nature it is of a permanent character. Under such circumstances the proper measure of damages is the resulting depreciation in the value of the property. Rosenthal v. Railway Co., 79 Tex. 325, 15 S. W. 268; Baugh v. Railway Co., 80 Tex. 58, 15 S. W. 587; Railway v. Hall, 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42; Daniel v. Railway (Tex. Civ. App.) 69 S. W. 198; Sanders v. Miller, 52 Tex. Civ. App. 372, 113 S. W. 996.

For the reasons indicated, the court erred in sustaining the exceptions and dismissing the suit.

Reversed and remanded.

On Motion for Rehearing and to Certify.

[3] In Burditt v. Swenson, 17 Tex. 489, 67 Am. Dec. 665, it was said:

"To constitute a nuisance, it is not necessary that the annoyance should be of a character to endanger health; it is sufficient if it occasions that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable. 9 Paige, 576; 9 Georgia, 425, 428; 9 Iredell, 244. Even that which does but cause a well-founded apprehension of danger may be a nuisance."

As illustrating what might be regarded as a nuisance because it causes "a well-founded apprehension of danger" Justice Wheeler quoted from Cheatham v. Shearon, 1 Swan (Tenn.) 213, 55 Am. Dec. 734, where it was held that the erection of a powder magazine in a populous part of the city and keeping large quantities of gunpowder stored therein is a nuisance per se.

In Comminge v. Stevenson, 76 Tex. 642, 13 S. W. 556, the court upheld a finding that a powder magazine situate three or four hundred feet from the plaintiff's residence was a nuisance, saying:

"We think the magazine and its contents afforded sufficient ground for plaintiff's apprehension and alarm, and that it satisfactorily appears from the evidence that the magazine is a 'thing that worked hurt, inconvenience, and damage' to plaintiff in both his person and property, in violation of his right to enjoy his property free from such hurt, inconvenience, and damage. Rhodes v. Dunbar, 57 Pa. St. 290; 4 Wait's Act. and Def. 731, 732, 749, 773."

The petition in the present action avers that the construction of the dam was a hurt, annoyance, and detriment to the plaintiff and his family, and that they have lived in continual fear of their lives and property, especially after the dam sprung a leak, and there is even now a leakage and seepage which may cause the dam to break, and that this had depreciated the value of plaintiff's land in the sum of $1,000.

The demurrer admitted the truth of these allegations, and in our opinion the authorities cited abundantly support the conclusion that the petition stated a cause of action in damages for the erection of a nuisance.

Appellant assumes that our ruling was that the dam and its impounded water constitutes a nuisance per se, but it is not to be so construed. Our discussion may convey that impression, but it was merely intended to show that the dam and impounded water was not a fanciful fear but sufficient to "cause a well-founded apprehension of danger" and a hurt, annoyance, and damage to the plaintiff.

Appellee requests that the question be certified to the Supreme Court upon two grounds, viz.: First. On account of its general public importance; second. Because of alleged conflict.

We are not unmindful of the importance of the question but think the past decisions of the Supreme Court clearly establish a right of action in the plaintiff's favor upon the allegations of his petition, and there is therefore no occasion to certify upon the first ground.

[4] As to the second ground we think there is no conflict. Furthermore, in case of a conflict of decision in an appeal from the county court the judgment of this court is no longer final. Chapter 56, Acts 38th Leg. (Reg. Sess) p. 110. Hence the Supreme Court has jurisdiction upon application for writ of error. Article 1521, R. S. or Vernon's Ann. Civ. St. Supp. 1918. If we err in our view that there is no conflict, the Supreme Court will correct the same upon writ of error.

Both motions are overruled.