MARANATHA TEMPLE, INC., Appellant,

v.

ENTERPRISE PRODUCTS COMPANY, Atlantic Richfield Company, Lyondell Petrochemical Company, Conoco, Inc., Diamond Shamrock Company, Diamond Shamrock Refining & Marketing Company, Dixie Pipeline Company, Dow Chemical Company, Dow Pipeline Company, Exxon Pipeline Company, Oxy Fractionators, Inc., F/K/A/ Cities Service Fractionators, Inc., Shell Pipeline Corporation, Tenneco Oil Company, Tenneco Natural Gas Liquids Corporation, Houston Oil & Mineral Corporation, Placid Refining Company, Texas Eastern Corporation, Texas Eastern Transmission Corporation, Texas Eastern Products Pipeline Company, Warren Petroleum Company, a Division of Chevron U.S.A., Inc., and Xral Storage & Terminaling Company, Appellees.

No. 01–93–00830–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 30, 1994.

Rehearing Overruled Feb. 9, 1995.

## OPINION

DUGGAN, Justice.

Maranatha Temple, Inc. (Maranatha), the plaintiff below, appeals a summary judgment granted to the defendants in a multi-cause of action lawsuit. We affirm.

### The Facts and Procedural History

Maranatha is a nonprofit corporation that operates a church in Mont Belvieu, Texas. The appellees own or operate petrochemical or hydrocarbon facilities or pipelines as part of an underground storage facility in Mont Belvieu. Apparently because of industrial accidents over the years at the hydrocarbon facilities, on April 30, 1986, some of the appellees announced a plan (the buy-out program) to purchase residential and church properties adjacent to the facilities. According to the press release, if all properties inside the program area were purchased, no home in Mont Belvieu would be located within 800 feet of a storage well. Although not a home, Maranatha, contending it was within 800 feet of a storage well, expected to be tendered a purchase offer for its property. It did not receive one. The appellees' representatives stated that Maranatha was never in the buy-out program area.

The announcement was preceded by the signing of an Agreement of Co–Owners (the Agreement) by Arco Mont Belvieu Corporation, Conoco Mont Belvieu Holdings, Inc., D–S Mont Belvieu, Inc., Enterprise Mont Belvieu Program Company, Mont Belvieu Land Company, Chambers County Land Company, Warren Petroleum, Inc., and Belvex, Inc. Under the Agreement, the co-owners agreed to become tenants in common with regard to certain property in the Mont Belvieu area, either owned or to be acquired, and to share expenses with regard to the acquisition and maintenance of such property.

On April 2, 1987, the city of Mont Belvieu, the Mont Belvieu Program [1], and the Mont

Tom F. Coleman, Jr., Thomas Lee Bartlett, Houston, for appellant.

Frank W. Morgan, B.D. Griffin, Woodlands, Martin D. Birne, Craig B. Glidden, Timothy J. Hill, Raybourne Thompson, Jr., David M. Bond, Arthur E. Murphy, Michael Hendryx, Heidi Ferenz, Robert J. Malinak, Dara L. Miles, John C. Allen, Christy Hext, Walter F. "Trey" Williams, David W. Prasifka, Edward J. Howlett, II, Glen M. Boudreaux, David S. Curcio, Michael V. Winchester, Dallas, James F. Tilson, F. William Mahley, Joseph S. Jaworski, William J. Sommers, Jr., Peggy O. Montgomery, Karen B. Satterlee, Michael Fredett, Houston, for appellees.

Before MIRABAL, WILSON and DUGGAN, JJ.

1. According to Maranatha: This group includes the co-owners under the Agreement, sometimes referred to as joint venturers, and contributors and associational contributors. The contributors are Dow Chemical Company, Dow Pipeline Company, and Dixie Pipeline Company. The associational contributors, who participated in the development, implementation, and announcement

Belvieu Industry Association[2] Steering Committee (represented by Robin Pate of appellee Enterprise Products Company) signed a Memorandum of Understanding (the Memorandum). Under the Memorandum, the city agreed to end a lawsuit against the appellees and to withdraw from various Railroad Commission proceedings. The appellees agreed to appraise and issue offers to purchase the residences of persons within a specified area and to explore in good faith with the city ways of acquiring property outside the area, but within an area originally proposed by the city.

Maranatha filed suit against some of the appellees on May 5, 1987, in Harris County, Texas, seeking actual and exemplary damages based on negligence, nuisance, and misrepresentation. In an amended petition, Maranatha asserted several new causes of action, including breach of contract, antitrust violations, and conspiracy, asked for damages,[3] abatement of the nuisance, and reformation, and included all of the appellees reflected in the style of this cause.

The appellees moved to transfer venue. The trial court granted the appellees' motions and transferred venue to Chambers County, where Mont Belvieu is located, on July 25, 1988. The Chambers County trial court granted the appellees' motions for summary judgment on November 15, 1991.

Maranatha appealed the November 15, 1991, summary judgment. On July 16, 1992, this Court reversed the summary judgment and remanded the cause to the trial court, holding that it was error to transfer venue from Harris County to Chambers County. *Maranatha Temple, Inc. v. Enterprise Prods. Co.*, 833 S.W.2d 736, 742 (Tex.App.—Houston [1st Dist.] 1992, writ denied). We did not address the merits of the summary judgment, because to do so would have been advisory. *Id.*

The cause was transferred back to Harris County. On July 23, 1993, the appellees again moved for summary judgment, supplementing the original summary judgment motions they had filed in Chambers County. In their motions for summary judgment, the appellees asserted that (1) all of Maranatha's claims in its ninth amended original petition were barred by the relevant statutes of limitation; (2) all of Maranatha's claims failed to state a cause of action; and (3) no genuine issue of material fact existed and Maranatha could not prevail on at least one element of each of its causes of action. On September 8, 1993, the Harris County trial court granted summary judgment on all grounds, stating:

> Having considered the pleadings, motions and briefs, the responses thereto filed by plaintiff, and the stipulations among the parties on special exceptions,[4] the court is

of the buy-out program, but did not execute the Agreement or acquire an undivided interest in the property purchased, are Oxy Fractionators, Inc., f/k/a/ Cities Service Fractionators, Inc., Exxon Pipeline Company, Shell Pipeline Corporation, Dow Chemical Company, Dow Pipeline Company, and Dixie Pipeline Company.

2. According to Maranatha: The Mont Belvieu Industry Association (MBIA) is an unincorporated association made up of a steering committee, coordinating committee, sub-committees and task groups of subcommittees that act through the employees of the members of the Mont Belvieu Industry Association. The following entities have been or presently are engaged in MBIA: Enterprise Products Company, Texas Eastern Transmission Corporation, Texas Eastern Products Pipeline Company, Texas Eastern Corporation, Warren Petroleum Company, a division of Chevron U.S.A., Inc., Conoco, Inc., Tenneco Oil Company, Tenneco Natural Gas Liquids Corporation, Xral Storage & Terminaling Company, Diamond Shamrock Company, Diamond Sham-

rock Refining and Marketing Company, Arco Chemical Company, Atlantic Richfield Company, Oxy Fractionators, Inc., f/k/a Cities Service Fractionators, Inc., Exxon Pipeline Company, Lyondell Petrochemical Company, Shell Pipeline Corporation, and Placid Refining Company.

3. Maranatha sought damages for the value of its improvements and property and a moving allowance, totaling $9,356,395, antitrust penalties, exemplary damages of $28,069,185, pre- and post-judgment interest, and attorney's fees of $12,-117,000.

4. On January 14, 1992, Maranatha and the appellees stipulated that no party objected to an insufficiency, if any, of special exceptions, the lack of a hearing on special exceptions, or the lack of a ruling by the trial court on any of the defendants' special exceptions that referred or related to Maranatha's failure, if any, to state a claim or cause of action as a matter of law. They stipulated that they could proceed to summary judgment motions, hearings, and rulings on

of the opinion that there are no genuine issues of material fact and the motions are well-taken and therefore should be granted. . . . *[S]ummary judgment is granted in favor of defendants on all issues, and all grounds.*

(Emphasis added.)

In seven points of error, Maranatha attacks the summary judgment as it pertains to its nuisance, breach of contract, negligence, and antitrust causes of action, challenges the appellees' limitations defenses, and complains that the trial court erred in limiting the scope of its discovery and evidence.

### Maranatha's Brief

■ Before turning to the issue of whether the trial court erred in granting summary judgment to the appellees, we must address the propriety of Maranatha's brief, the instrument by which Maranatha hopes to persuade us that the court did indeed err. Rule 74(h) of the Texas Rules of Appellate Procedure provides that appellate briefs in civil cases may not exceed 50 pages, except upon motion granted by the court of appeals. Maranatha moved to file a brief in excess of the 50–page limit, and we granted the motion, ordering that Maranatha's brief **"SHALL NOT BE OVER 85 PAGES."** (Emphasis in order.) While Maranatha's brief ends on page 83, at page 21 of the brief, Maranatha "incorporates" into its brief over 200 pages of argument from various responses which were filed in the trial court and are now part of the transcript.

The appellees argue that Maranatha's "incorporation" of the additional argument into its brief "clearly violates the spirit of TEX.R.APP.P. 74(h) and [this Court's] order limiting [Maranatha's] brief to 85 pages." We agree. As such, we strike from Maranatha's brief the material Maranatha seeks to "incorporate." We will not consider the portions of the transcript Maranatha seeks to "incorporate" into its brief to be *part of its brief,* although we will consider them as part of the record.

the failure of Maranatha to state a cause of action as a matter of law without first employing

### The Standard of Review

■ One of the purposes of summary judgment is to eliminate patently unmeritorious claims. *Gulbenkian v. Penn,* 252 S.W.2d 929, 931 (Tex.1952). A defendant who seeks summary judgment must prove conclusively that the plaintiff cannot prevail. *Griffin v. Rowden,* 654 S.W.2d 435, 436 (Tex.1983); *Jaime v. St. Joseph Hosp. Found.,* 853 S.W.2d 604, 607 (Tex.App.—Houston [1st Dist.] 1993, no writ). Below, we address two grounds on which summary judgment for a defendant is proper, and set out the guidelines for our review of a summary judgment.

### 1. The Negation of an Element of the Plaintiff's Cause of Action

■ A defendant can prove conclusively that the plaintiff cannot prevail by showing that at least one element of the plaintiff's cause of action has been conclusively established against him. *Gray v. Bertrand,* 723 S.W.2d 957, 958 (Tex.1987); *Jaime,* 853 S.W.2d at 607. A matter is "conclusively established" for summary judgment purposes if ordinary minds cannot differ regarding the conclusion to be drawn from the evidence. *Zep Mfg. Co. v. Harthcock,* 824 S.W.2d 654, 657–58 (Tex.App.—Dallas 1992, no writ) (citing *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982)).

■ When the defendant has produced competent evidence negating a necessary element of the plaintiff's cause of action, the plaintiff, to avoid summary judgment, must then introduce evidence that raises a fact issue on the element the defendant is trying to negate. *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 107–108 (Tex.1984); *Jaime,* 853 S.W.2d at 607. If the plaintiff fails to introduce such evidence, i.e., if the summary judgment evidence establishes that there is no genuine issue of material fact, then summary judgment is proper. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993); *Enchanted Estates Community Ass'n v. Timberlake Im-*

special exceptions.

*provement Dist.,* 832 S.W.2d 800, 801 (Tex. App.—Houston [1st Dist.] 1992, no writ).

### 2. The Lack of a Cause of Action

■ If the plaintiff's petition affirmatively demonstrates that no cause of action exists or that the plaintiff's recovery is barred, no opportunity to amend is necessary, and summary judgment or dismissal is proper. *Peek v. Equipment Serv. Co.,* 779 S.W.2d 802, 805 (Tex.1989). Summary judgment is proper where the plaintiff's allegations cannot constitute a cause of action as a matter of law. *Cockrell v. Republic Mortgage Ins. Co.,* 817 S.W.2d 106, 116 (Tex. App.—Dallas 1991, no writ) (citing *Lumpkin v. H & C Communications, Inc.,* 755 S.W.2d 538 (Tex.App.—Houston [1st Dist.] 1988, writ denied)).

### 3. Appellate Review of a Summary Judgment

■ On appellate review of a summary judgment, we must take all evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve all doubts in favor of the nonmovant. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex.1985); *Jaime,* 853 S.W.2d at 607. We will not affirm a summary judgment on a ground that was not specifically presented in the motion for summary judgment. *Travis v. City of Mesquite,* 830 S.W.2d 94, 100 (Tex.1992); *Bill De La Garza & Assocs., P.C. v. Dean & Ongert,* 851 S.W.2d 371, 373 (Tex.App.— Houston [1st Dist.] 1993, no writ). Nor will we ordinarily reverse a summary judgment on a ground that was not expressly presented to the trial court by a written motion, answer, or other response to the motion for summary judgment. *Travis,* 830 S.W.2d at 99–100; *Universal Savings Ass'n v. Killeen Savings & Loan Ass'n,* 757 S.W.2d 72, 75 (Tex.App.—Houston [1st Dist.] 1988, no writ); *see Manoogian v. Lake Forest Corp.,* 652 S.W.2d 816, 819 (Tex.App.—Austin 1983, writ ref'd n.r.e.). Further, we will not re-

verse a summary judgment on a ground of opposition that was expressly presented to the trial court by a written response to the motion for summary judgment, but that was subsequently abandoned by the nonmovant. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). When the trial court's summary judgment order does not specify the ground or grounds on which summary judgment is granted, we will affirm the summary judgment if any of the grounds stated in the motion are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Jaime,* 853 S.W.2d at 608.

### Does Maranatha Have a Cause of Action for Nuisance?

In its second point of error, Maranatha asserts that the trial court erred in granting summary judgment for the appellees on its nuisance cause of action.[5] The appellees sought summary judgment on Maranatha's nuisance claim on the ground (among others) that Maranatha had no nuisance cause of action as a matter of law.

■ Over a century ago, the supreme court described the term "nuisance" as follows:

> The word means, literally, annoyance; in law, it signifies, according to Blackstone, "anything that worketh hurt, inconvenience, or damage." A private nuisance is defined to be anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another.... To constitute a nuisance, it is not necessary that the annoyance should be of a character to endanger health; it is sufficient if it occasions that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable. Even that which does but cause a well-founded apprehension of danger may be a nuisance.

*Burditt v. Swenson,* 17 Tex. 489, 502 (1856) (citations omitted). Since *Burditt,* courts have defined a nuisance as a condition that

---

5. In point of error one, Maranatha contends generally that the trial court erred in granting the appellees' motions for summary judgment and entering judgment against Maranatha. Maranatha makes no separate argument under this point

of error, but combines it with Maranatha's second, third, fourth, fifth, and sixth points of error, under which it makes separate arguments relating to specific causes of action. Similarly, we do not consider point of error one separately.

substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Bible Baptist Church v. City of Cleburne,* 848 S.W.2d 826, 829 (Tex.App.—Waco 1993, writ denied); *Meat Producers, Inc. v. McFarland,* 476 S.W.2d 406, 411 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.); *City of Temple v. Mitchell,* 180 S.W.2d 959, 962 (Tex.Civ.App.—Austin 1944, no writ); *see Bily v. Omni Equities, Inc.,* 731 S.W.2d 606, 611 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

 A review of both case law and scholarly writing on the subject of nuisance demonstrates that a nuisance occurs in one of three ways: by (1) physical harm to property, such as by the encroachment of a damaging substance or by the property's destruction; (2) physical harm to a person on his or her property, such as by an assault on his or her senses or by other personal injury; and (3) emotional harm to a person from the deprivation of the enjoyment of his or her property, such as by fear, apprehension, offense, or loss of peace of mind. *See Eakens v. Garrison,* 278 S.W.2d 510, 515 (Tex.Civ.App.—Amarillo 1955, writ ref'd n.r.e.); William L. Prosser, *Nuisance Without Fault,* 20 Tex.L.Rev. 399, 414–15 (1942); 54 Tex.Jur.3d *Nuisances* § 14 (1987).

The first category—physical harm to property—is represented by such cases as *Bible Baptist Church,* 848 S.W.2d at 829 (raw sewage backed up onto plaintiff's property); *Manchester Terminal Corp. v. Texas TX TX Marine Transp., Inc.,* 781 S.W.2d 646, 648 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (plaintiff alleged large amounts of petroleum coke dust settled on its property and contaminated facilities and stored goods); *Bily,* 731 S.W.2d at 609 (fill dirt on defendant's property caused water to back up into plaintiff's backyard); and *Columbian Carbon Co. v. Tholen,* 199 S.W.2d 825, 826 (Tex.Civ.App.—Galveston 1947, writ ref'd) (large quantities of soot from plant constantly fell onto plaintiff's property). However, the summary judgment record demonstrates that Maranatha does not have a nuisance cause of action for physical injury to land, because it

shows that Maranatha's land (and structure) have not been physically damaged or encroached upon. Maranatha does not argue otherwise.

The second category—physical harm to a person on his or her property—is represented by such cases as *Bay Petroleum Corp. v. Crumpler,* 372 S.W.2d 318 (Tex.1963) (plaintiffs claimed noxious gases from salt dome harmed them), and *Mitchell,* 180 S.W.2d at 962 (plaintiffs claimed they were nauseated by odors from plant). Maranatha does not have (or allege) a nuisance cause of action for this type of harm, either. Again, Maranatha does not argue otherwise.

 The third category—emotional harm to a person from the deprivation of the enjoyment of his or her property—is the one on which Maranatha relies. Maranatha contends that a "nuisance claim may be asserted without physical injury." The appellees disagree, contending that Maranatha "cannot offer any modern case to support its 'fear and apprehension' nuisance theory."

 In *Burditt,* the supreme court indicated that even something that causes only a well-founded apprehension of danger may be a nuisance. 17 Tex. at 502. Other cases have repeated the *Burditt* nuisance description, including the "well-founded apprehension of danger" aspect. *See, e.g., Comminge v. Stevenson,* 76 Tex. 642, 13 S.W. 556, 557 (1890); *Parker v. City of Fort Worth,* 281 S.W.2d 721, 723 (Tex.Civ.App.—Fort Worth 1955, no writ); *Stoughton v. City of Fort Worth,* 277 S.W.2d 150, 152 (Tex.Civ.App.—Fort Worth 1955, no writ); *McMahan v. City of Abilene,* 261 S.W. 455, 456 (Tex.Civ.App.—El Paso 1924) (opinion on reh'g), *writ dism'd,* 292 S.W. 525 (Tex.1927); *Sanders v. Miller,* 52 Tex.Civ.App. 372, 113 S.W. 996, 998 (Texarkana 1908, no writ).

In at least two cases, an appellate court has recognized that plaintiffs may have a nuisance cause of action even in the absence of an invasion of or injury to their property. *See Comminge,* 13 S.W. 556 (fear of powder magazine); *McMahan,* 261 S.W. 455 (fear that earthen dam would break). However, for the following reasons, *Comminge* and

*McMahan* and any similar cases do not control in a case like this one.

 There are two species of nuisance: nuisance per se and nuisance in fact. *Freedman v. Briarcroft Property Owners, Inc.*, 776 S.W.2d 212, 216 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *City of Sundown v. Shewmake*, 691 S.W.2d 57, 59 (Tex.App.—Amarillo 1985, no writ). A nuisance per se is an act, occupation, or structure that is a nuisance at all times, under any circumstances, and in any location. *Freedman*, 776 S.W.2d at 216; *Shewmake*, 691 S.W.2d at 59. A nuisance in fact is an act, occupation, or structure that becomes a nuisance by reason of its circumstances or surroundings. *Freedman*, 776 S.W.2d at 216; *see Shewmake*, 691 S.W.2d at 59.

 Neither the lawful use of property nor the lawful conduct of a business is a nuisance per se. *Storey v. Central Hide & Rendering Co.*, 226 S.W.2d 615, 617 (Tex. 1950); *O'Connor v. Ryan*, 159 S.W.2d 531, 533 (Tex.Civ.App.—San Antonio 1942, writ ref'd); *see Inwood Forest Community Improvement Ass'n v. R.J.S. Dev. Co.*, 630 S.W.2d 751, 754 (Tex.App.—Houston [1st Dist.] 1982, no writ). In particular, Texas courts have disallowed nuisance per se claims against lawfully-run industries like those involved here. *See, e.g., Humble Pipe Line Co. v. Anderson*, 339 S.W.2d 259 (Tex.Civ.App.—Waco 1960, writ ref'd n.r.e.) (operation of oil pipeline); *Domengeaux v. Kirkwood & Co.*, 297 S.W.2d 748 (Tex.Civ.App.—San Antonio 1956, no writ) (oil drilling operations); *Automatic Gas Co. v. Dudding*, 189 S.W.2d 780 (Tex.Civ.App.—Texarkana 1945) (storage and distribution of liquid butane gas), *aff'd*, 145 Tex. 1, 193 S.W.2d 517 (1946); *Warren v. Premier Oil Ref. Co.*, 173 S.W.2d 287 (Tex. Civ.App.—Eastland 1943, writ ref'd w.o.m.) (operation of oil pipeline); *Hall v. Amoco Oil Co.*, 617 F.Supp. 111 (S.D.Tex.1984) (operation of oil refineries). Similarly, for the following reasons, we decline to allow a nuisance in fact cause of action based on fear,

apprehension, or other emotional reaction that results from the lawful operation of industries in Texas.[6]

Texas is a state where industry, and particularly energy-related industry, is openly abundant. If we were to allow a cause of action to persons who have not been harmed, in their land or body, by the lawful operation of an industry, but who are afraid that one day they will be, we would be opening our courts to a potential torrent of litigation. Persons who are apprehensive that one day in the future an industrial accident will harm them or their property could sue for their apprehension alone. Yet, doubtlessly, almost *every* Texas resident has experienced such apprehension at one time or another. For us to allow this cause of action would lead to a vast number of lawsuits—lawsuits not filed by persons who have actually been physically injured. The potential for virtually unlimited litigation renders the allowance of this claim, which addresses a comparatively de minimis harm in the first place, contrary to public policy.

Maranatha has no viable claim for nuisance. We therefore overrule point of error two.

### Does Maranatha Have a Cause of Action for Breach of Contract?

In its third point of error, Maranatha contends that the trial court erred in granting summary judgment for the appellees on its contract cause of action.

As noted above, on April 2, 1987, the city of Mont Belvieu, the Mont Belvieu Program, and the Mont Belvieu Industry Association Steering Committee signed a Memorandum of Understanding. According to Maranatha, the city of Mont Belvieu would not have signed the Memorandum if Robin Pate had not promised to meet with Maranatha in good faith. Maranatha contends that the oral agreement was part of the resolution between the appellees and the city; that it was the consideration to the city for the city's

---

**6.** We note that there is no case or authority that specifically gives a nuisance in fact cause of action based on fear, apprehension, or other emotional reaction that results from the lawful operation of industries in Texas. We have not found any reported case or authority where this specific cause of action was brought. Thus, we are not *taking away* a particular cause of action; rather, we are just declining to allow one.

execution of the Memorandum; that Maranatha is a third-party beneficiary of the oral agreement; and that the appellees breached the oral agreement.[7]

 A person who is not a party to a contract will still have a cause of action to enforce the contract if it was made for his or her benefit. *Dairyland County Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 775 (Tex. 1983). The person claiming to be a third-party beneficiary must establish the existence of a contract and standing as a third-party beneficiary. *Paragon Sales Co. v. New Hampshire Ins. Co.*, 774 S.W.2d 659, 660 (Tex.1989). Once some evidence has been produced to show a contract and standing as a third-party beneficiary, it is incumbent on the opposite party to prove any defenses that would limit or bar recovery by the third-party beneficiary. *Id.* at 661.

This was how the mayor of Mont Belvieu, Fred Miller, characterized the alleged oral agreement in his affidavit of September 19, 1990:

> As part of the Memorandum [of Understanding], Industry agreed that a good faith effort would be made to address the issue of acquisition of existing commercial properties outside the Mont Belvieu Program's area of operations. It was my understanding that Mr. Pate of Enterprise Products Company agreed to meet with representatives of Maranatha Temple, and make a good faith effort to address the issue of Maranatha Temple as part of the overall resolution of the City's disputes with Industry.

In his February 13, 1991, deposition, Miller responded to questions concerning the nature of the alleged oral agreement this way:

Q: Now, before the resolution in the April 2nd, '87 Minutes and before you signed the Memorandum of Understanding, did you have a discussion with industry as to how the issue of Maranatha Temple was going to be addressed relating to this resolution?

A: Yes, we did.

Q: And tell me about that, please.

A: The Maranatha Temple was—in the discussions was a point that kept coming up, and it was resolved by Robin Pate agreeing to meet in a real good faith effort with Maranatha Temple to resolve the problem there.

Q: Was the agreement of Mr. Pate to meet with Maranatha Temple in good faith a part of this overall resolution of the dispute between the city and industry?

. . . .

A: It is not a written part of the Memorandum of Understanding. It was part of—before we agreed to the Memorandum of Understanding, he and industry agreed that Enterprise and Robin Pate would do that.

Q: Had you not secured that agreement from Mr. Pate, would the city have executed this Memorandum of Understanding?

. . . .

A: At that period of time, I don't know what we would have done. We would not—at that period of time of time, we would not.

The appellees make several arguments that the alleged oral agreement was unenforceable. We agree with two of them.

### 1. The Parol Evidence Rule

 The parol evidence rule is not a rule of evidence, but a rule of substantive law. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 32 (1958); *Muhm v. Davis*, 580 S.W.2d 98, 101 (Tex.Civ.App.— Houston [1st Dist.] 1979, writ ref'd n.r.e.). When parties have concluded a valid integrated agreement with respect to a particular subject matter, the parol evidence rule precludes the enforcement of inconsistent prior or contemporaneous agreements. *Hubacek*, 317 S.W.2d at 32; *Muhm*, 580 S.W.2d at 101. On the other hand, the rule does not preclude enforcement of prior or contemporaneous agreements that are collateral to an integrated agreement and that are not inconsistent with and do not vary or contradict its express or implied terms or obligations. *Hubacek*, 317 S.W.2d at 32.

---

7. In his deposition, Maranatha's Pastor Trice testified that Robin Pate told him Maranatha was not included in the buy-out program, and Maranatha would not be considered for a buy-out.

■ The appellees maintain that the Memorandum of Understanding is an integrated agreement and that the alleged oral agreement cannot be used to vary the Memorandum's terms. Maranatha argues that the oral agreement is consistent with the Memorandum, and was the real consideration for the Memorandum.[8]

We must review the specific terms of the Memorandum of Understanding in order to resolve this issue. The introduction to the Memorandum states as follows:

> This memorandum is intended to confirm the proposed cooperative resolution of the controversies involving the City of Mont Belvieu and companies with underground hydrocarbon storage operations and related facilities in Mont Belvieu.

In part I of the Memorandum, the City of Mont Belvieu agreed to: (1) file a motion to dismiss with prejudice its lawsuit against the appellees; (2) release the appellees from all claims arising out of their ownership and operation of the hydrocarbon facilities and their purchase, acquisition, or ownership of real property in or around Mont Belvieu existing on the date of the release;[9] (3) withdraw as a party to one proceeding before the Railroad Commission; and (4) file a statement of nonopposition to the continuation of temporary field rules for another 18 months in another Railroad Commission proceeding.

In part II, the Mont Belvieu Program, subject to formal commitments from the appellees (informal commitments having already been obtained), agreed to appraise and issue offers to purchase residences of persons "within the area of the Program's operations ... having litigation pending as of April 22, 1986 against various corporations with industrial operations in Mont Belvieu."

In part III, the city and the Mont Belvieu Program agreed as follows:

> During the twelve months after the City complies with its undertakings to the Mont Belvieu Program concerning the litigation in Chambers County and proceedings before the Railroad Commission, representatives of the companies ... and the City agree to meet in a good faith attempt to explore possible ways and means for the City and Industry, in cooperation and collaboration, to achieve progress in the following areas:
> 1. Acquisition of the residential properties of non-litigant owners who previously refused the Mont Belvieu Program's offer to purchase.
> 2. Acquisition of existing commercial properties and vacant land within the area of the Mont Belvieu Program's operations.
> 3. Acquisition of existing residential and commercial properties in areas outside the Mont Belvieu Program's area of operations in the area originally proposed by the City. . . .

8. *See Wagner v. Austin Savings & Loan Ass'n*, 525 S.W.2d 724 (Tex.Civ.App.—Beaumont 1975, no writ). Maranatha also states five other scenarios in which the parol evidence rule will not be enforced. After listing them, however, Maranatha offers no discussion of the exceptions and no explanation of how the exceptions might apply here. Instead, Maranatha states, "For a more detailed discussion of these points, please refer to Maranatha's Supplemental Brief at pages 3–14."

For reasons discussed above, we confine Maranatha to its 83–page brief. We will not refer to a supplemental brief for support for one of Maranatha's points of error. To do so would be contrary to our previous order and the spirit of rule 74(h). A party may not circumvent a page limit for its brief by filing more than one brief, each within the page limit.

9. In pertinent part, the form of release read: Releasor [City of Mont Belvieu] does hereby release, acquit, and forever discharge Releasee

> [the appellees] from any and all liability, claims, demands, damages, cause of action, judgments, and executions of any kind or character (collectively referred to as "Claims") that Releasor ever had, or now has, or may have, whether known or unknown, whether accrued or to accrue, or that anyone claiming through or under Releasor may have, or claim to have, against Releasee allegedly arising out of (i) the ownership and operation by Releasee of industrial facilities in or about Mont Belvieu, Chambers County, Texas, or (ii) the purchase, acquisition, or ownership by Releasee of real property in or about Mont Belvieu, Chambers County, Texas, through and including the date of this release and not thereafter, excluding (y) any Claims for unpaid taxes or administrative fees and (z) any recorded liens or encumbrances in favor of Releasor, that are in existence on the date of this release.

All parties understand that, while these companies and the City are willing to explore development of a plan for action on these subjects, no single company nor the City can presently commit to accomplish specific objectives. Moreover, the City and the referenced companies cannot, at this time, commit to specific accomplishments; and failure to realize actual accomplishments on any of the subjects listed in this Paragraph III shall not be the basis for or give rise to any cause of action for breach of contract.

Having read the Memorandum of Understanding, including its introduction and the exhibits attached to it, and the form of release, we conclude as a matter of law that it is a fully integrated document settling all controversies, between the City of Mont Belvieu and the appellees, that were in existence on April 2, 1987.

The Memorandum states that its purpose is "to confirm the proposed [ ] resolution of the controversies" between the city and the appellees. It is undisputed, and was undisputed below, that Maranatha's property is not covered in any of the three categories listed in part III. As such, addressing what to do about Maranatha's property was not, judging by the written, integrated Memorandum, part of the resolution of the controversies between the city and the appellees. Thus, the alleged oral agreement—that, as part of the resolution between the appellees and the city, Robin Pate would address the problem of what to do with Maranatha's property—varies the terms of the Memorandum, the written, integrated agreement that purports to be the embodiment of the resolution between the city and the appellees, and which *does not* include Maranatha's property in the properties the appellees intended to address. The alleged oral agreement seeks to make a future discussion about Maranatha's property part of the terms of an integrated, written agreement that leaves that particular subject out. The parole evidence rule bars this use of the oral agreement.

Furthermore, the Memorandum explicitly sets forth the consideration for the city's execution of the Memorandum—the making of buy-out offers to the persons designated in the part II. This fact contradicts Maranatha's contention that the alleged oral agreement was the consideration for the city to execute the Memorandum. The oral agreement varies the Memorandum's recital of what consideration the city is to receive for its execution of the Memorandum by attempting to add as consideration the term that Robin Pate would address the problem of what to do with Maranatha's property. The "real consideration" is stated in the Memorandum, and parol evidence that varies the terms of the Memorandum on that point cannot be used as evidence of what the "real consideration" is. *See Wagner,* 525 S.W.2d at 730.

We hold that the parol evidence rule precludes the enforcement of the alleged oral agreement. The oral agreement does not come within the parol evidence rule exceptions that Maranatha argues.

## 2. An Agreement to Negotiate in the Future

■ The appellees also contend that the alleged oral agreement was merely "an agreement to enter into future negotiations," and is thus unenforceable. Relying on *CKB & Assocs. v. Moore McCormack Petroleum, Inc.,* 809 S.W.2d 577 (Tex.App.—Dallas 1991, writ denied), Maranatha argues that an agreement to make a "good faith" effort is a legally enforceable agreement.

In *CKB,* the court of appeals considered an oil refining agreement which contained two "best efforts" provisions. 809 S.W.2d at 581. One of the provisions called for the refiner "to use its best efforts to help [the other party] market the production of JP–4 jet fuel." *Id.* The other provision required the refiner to "use its best efforts to produce the target quantities within a tolerance of 1%." *Id.* The court held that the refiner had breached the contract. *Id.* at 582.

■ Although in *CKB* no party attacked the enforceability of the contract (unlike here), we acknowledge that some cases hold that an agreement to use best efforts can be enforceable. *See, e.g., Thompson v. Liquichima,* 481 F.Supp. 365 (S.D.N.Y.1979). However, the words "good faith effort" or

"best effort" are not talismanic; their presence in an agreement does not automatically mean that the provision which contains them is enforceable.

Here, the oral agreement at issue states that Robin Pate is to meet with Maranatha's representatives and make a good faith effort to address the problem of Maranatha Temple. This provision is nothing more than an agreement to enter into good faith negotiations in the future concerning what to do about Maranatha. Fred Miller's affidavit and deposition testimony support this conclusion. For example, in his affidavit, Miller stated that he understood the provision to mean that Robin Pate had "agreed to meet with representatives of Maranatha Temple, and make a good faith effort to address the issue...." His deposition testimony is in a similar vein. The agreement on which Maranatha relies is no more than an agreement to negotiate, in the future, toward resolving the issue of Maranatha.

■ Courts have long held that an agreement to enter into negotiations in the future is unenforceable. *See, e.g., Radford v. McNeny,* 129 Tex. 568, 104 S.W.2d 472, 474 (1937); *McCurry v. Aetna Cas. & Sur. Co.,* 742 S.W.2d 863, 866 (Tex.App.—Corpus Christi 1987, writ denied); *Weitzman v. Steinberg,* 638 S.W.2d 171, 175 (Tex.App.—Dallas 1982, no writ); *Estate of Eberling v. Fair,* 546 S.W.2d 329, 334 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). The fact that this particular agreement to negotiate in the future includes a term calling for the appellees to put forth a "good faith effort" in the negotiations does not remove the agreement from this rule. The agreement, whatever its specific language, is still an agreement to enter into future negotiations, and, as such, it is unenforceable.

We overrule Maranatha's third point of error.

## Does Maranatha Have a Cause of Action for Negligence?

■ In its fourth point of error, Maranatha asserts that the trial court erred in granting summary judgment for the appellees on its negligence cause of action.

On appeal, Maranatha argues only one basis for its negligence claim: that the appellees "acted negligently in announcing [the] buy-out." Maranatha complains that the appellees

affirmatively announced to the world that they intended to acquire non-industrial property located within "800 [feet] of storage wellheads." Defendants made this public statement knowing that Maranatha's property was located within 800 feet of storage wellheads (within Defendants' expanded "safety zone") and that Defendants did not intend to extend a buyout offer to Maranatha, even though their operations exposed Maranatha to a dangerous condition. As a natural and foreseeable consequence of their affirmative course of action, Defendants destroyed the value of Maranatha's property.

The appellees contend that they owed no legal duty to Maranatha, and that, as a result, Maranatha has no claim for negligence regarding the announcement of the buy-out. We agree.

In beginning our analysis, we note that the press release announcing the buy-out actually stated that "[i]f all properties *inside the program area* are purchased, *no home* in the City will be within 800 ft. of a storage well." (Emphasis added.) Maranatha's property is not "inside the program area." Contrary to Maranatha's assertion, the press release did not state that the appellees "intended to acquire non-industrial property located within '800 [feet] of storage wellheads.'"

■ The "threshold inquiry" in any negligence case is whether the defendant owed the plaintiff a duty. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). The plaintiff must show the existence of a duty owed to it by the defendant to establish liability for negligence. *Id.* Whether a legal duty exists is a question of law. *Salinas v. General Motors Corp.,* 857 S.W.2d 944, 947 (Tex.App.—Houston [1st Dist.] 1993, no writ). Questions of law may be resolved by summary judgment. *Wisenbarger v. Gonzalez Warm Springs Rehabilitation Hosp., Inc.,* 789 S.W.2d 688, 691 (Tex.App.—Corpus

Christi 1990, writ denied); *see Salinas*, 857 S.W.2d at 945.

As noted above, the appellees did not actually perform the act that Maranatha asserts created the duty, i.e., the act of "announc[ing] to the world that they intended to acquire non-industrial property located within '800 [feet] of storage wellheads.'" Thus, no duty can be predicated on this act, because it never happened. We hold that, as a matter of law, the appellees had no duty to Maranatha not to announce in the press release what they actually announced, i.e., that "[i]f all properties inside the program area are purchased, no home in the City will be within 800 ft. of a storage well."

We overrule point of error four.

### Does Maranatha Have an Antitrust Cause of Action?

 In its fifth point of error, Maranatha contends that the trial court erred in granting summary judgment for the appellees on Maranatha's antitrust cause of action. Maranatha brought this cause of action pursuant to section 15.05 of the Texas Free Enterprise and Antitrust Act of 1983. TEX.BUS. & COM. CODE ANN. § 15.05 (Vernon 1987).

Section 15.04 of the act provides that the act "shall be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes to the extent consistent with [its] purpose" of maintaining and promoting economic competition in Texas and providing the benefits of that competition to Texas consumers. TEX.BUS. & COM. CODE ANN. § 15.04 (Vernon 1987); *Caller–Times Publishing Co. v. Triad Communications, Inc.*, 826 S.W.2d 576, 580 (Tex.1992). With this principle in mind, we turn to the appellees' argument that Maranatha lacks standing under the act.

 Whether a plaintiff has standing to bring an antitrust claim is the initial inquiry in antitrust cases. *See Jayco Sys., Inc. v. Savin Business Machs. Corp.*, 777 F.2d 306, 313 (5th Cir.1985). The issue of standing to bring an antitrust claim is a question of law. *Eagle v. Star–Kist Foods, Inc.*, 812 F.2d 538, 539 (9th Cir.1987).

The party bringing an antitrust claim "must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator" in the market. *Eagle*, 812 F.2d at 540; *accord Bell v. Dow Chem. Co.*, 847 F.2d 1179, 1183 (5th Cir.1988) (holding that "consumers and competitors ... are the parties that have standing to sue"); *see Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 539, 103 S.Ct. 897, 909, 74 L.Ed.2d 723 (1983) (holding that plaintiff had no antitrust cause of action where it "was neither a consumer nor a competitor" in the market). Maranatha did not plead that it was a consumer of the appellees or that it was their competitor. On appeal, Maranatha argues that it was a competitor. Maranatha asserts that it was a potential seller of real estate (its own property) in the market; that it "showed an intention to enter the business of selling real estate ..."

Maranatha's status as a potential seller of real estate does not make it a competitor of the appellees. The appellees were not sellers of real estate. On the contrary, they were *buying* real estate; hence, Maranatha's complaint that they did not buy *Maranatha's* property. The appellees were not in the business of selling property.

Because Maranatha was neither a consumer of the appellees nor their competitor, Maranatha lacks standing to bring an antitrust claim. We therefore overrule point of error five.

### Maranatha's Other Causes of Action

 Nuisance, breach of contract, negligence, and antitrust violations were not the only causes of action Maranatha asserted in its ninth amended original petition. The petition also alleges causes of action for misrepresentation and conspiracy, and asserts that all appellees were liable based on theories of res ipsa loquitur, alter ego, joint liability, enterprise liability, market share liability, and concert of action liability.

In a cross-point, the appellees ask us to affirm the summary judgment on these causes of action because Maranatha "fail[ed] to address these claims by point of error or by argument in its brief." Maranatha re-

sponds that it assigned error to these grounds under its generic first point of error, which states that "[t]he trial court erred in granting Defendants' Motions for Summary Judgment (and entering judgment against Maranatha)," and that it "sufficiently addressed" these theories in its brief.

We agree with the appellees. Maranatha's brief is insufficient, under TEX.R.APP.P. 74(f), to raise these issues for our review. Rule 74(f)(2) states that an argument in a brief "shall include ... such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." Maranatha's brief offers no argument at all on the issues of conspiracy, res ipsa loquitur, and alter ego. These issues are therefore not before us.

Maranatha's brief contains the following statements on joint liability, enterprise liability, market share liability, and concert of action liability:

*Collective Liability Theories*

Defendants erroneously argue that they are entitled to summary judgment on the ground that there is "no credible evidence" on Maranatha's enterprise liability, market share liability, and concert in action theories. *Gaulding v. Celotex Corp.,* 772 S.W.2d 66 (Tex.1989).

Without more, this is not a sufficient argument under rule 74(f)(2). This is no more than a purely conclusory statement and a citation. There is no discussion of these theories. There is no discussion of how any of the facts in this case are actionable under these theories. Maranatha does not assert what evidence, if any, existed to make the defendants' argument erroneous.

Nor is there argument on misrepresentation. The only statements regarding misrepresentation concern limitations and the defendants' alleged fraudulent concealment of Maranatha's causes of action. The *cause of action* of misrepresentation, including its elements, is not discussed. Nor does Maranatha state how the facts in this case give rise to this cause of action.

■ When the appellant does not provide us with argument that is sufficient to make an appellate complaint viable, we will not perform an independent review of the record and applicable law in order to determine whether the error complained of occurred. *Ferguson v. DRG/Colony N., Ltd.,* 764 S.W.2d 874, 887 (Tex.App.—Austin 1989, writ denied); *Most Worshipful Prince Hall Grand Lodge v. Jackson,* 732 S.W.2d 407, 412 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). We will not do the job of the advocate. *Most Worshipful,* 732 S.W.2d at 412.

We decline to review these issues.

### Maranatha's Other Points of Error

On the grounds discussed above, we have upheld the summary judgment on the claims actually before us. Thus, we need not decide whether the appellees' limitations defenses were meritorious.[10] *See Carr,* 776 S.W.2d at 569; *Jaime,* 853 S.W.2d at 608 (both cases holding that, when the trial court's summary judgment order does not specify the ground or grounds on which summary judgment is granted, we will affirm the summary judgment if any of the grounds stated in the motion are meritorious).

■ For two reasons, we also decline to address Maranatha's assertion that the trial court erred in limiting the scope of its discovery and evidence.[11] First, because summary judgment was proper on the ground that Maranatha, as a matter of law, did not have the causes of action it alleged, any error regarding a limit on discovery and evidence was harmless. Thus, to address the merits of this complaint would be advisory.

Second, Maranatha states that it "raises this Point of Error because of the significant prejudicial effect on Maranatha's ability to present its causes of action when this case is reversed, remanded and retried." We do not reverse this case, but rather affirm it. Under Maranatha's own argument, our disposition of this case makes this point of error moot.

---

**10.** Maranatha attacks these defenses in point of error six.

**11.** Maranatha brings this complaint in point of error seven.

### Conclusion

We affirm the summary judgment.