SHAMBURGER v. SCHEURRER et al.
(No. 8793.)

(Court of Civil Appeals of Texas. Ft. Worth. June 16, 1917. Rehearing Denied Oct. 13, 1917.)

1. JUDGMENT ⨪248—SUPPORT BY PLEADING —EVIDENCE.

Plaintiffs' cause of action must rest on the allegations contained in their petition, and the judgment rendered cannot be sustained by evidence introduced over defendant's objection tending to establish facts and conditions not alleged in the petition.

2. NUISANCE ⨪59 — "NUISANCE PER SE" — "NUISANCE AT LAW" — "NUISANCE ACCIDENS"—"NUISANCE IN FACT."

A "nuisance per se," or a "nuisance at law," is an act, thing, or omission, or use of property which in and of itself is a nuisance, and hence not permissible or excusable under any circumstances; but a "nuisance accidens," or a "nuisance in fact," is one which becomes a nuisance by reason of circumstances and surroundings (quoting Words and Phrases, Second Series, Nuisance Per Se).

3. NUISANCE ⨪61 — LUMBER YARD — "NUISANCE PER SE."

In the absence of statutory enactment limiting the right to conduct a lumber yard within defined districts, the maintenance of a lumber yard is not a nuisance per se, since the pursuit of a lawful business in a lawful way cannot be said to be such a nuisance.

4. NUISANCE ⨪75 — INJUNCTION — DANGER FROM FIRE—ALLEGATION AND PROOF.

To entitle an adjoining property owner to injunction against a nuisance increasing the danger from fire, the allegation and proof of the imminence, or probability of the danger from fire, must be clear and unmistakable.

5. NUISANCE ⨪61—ABATEMENT AND INJUNCTION—DIMINUTION OF VALUE OF PROPERTY.

Diminution of value caused to plaintiffs' property by reason of the erection of a building or the use of property by another is not sufficient to justify an injunction as to prevent a nuisance.

6. NUISANCE ⨪61—ABATEMENT AND INJUNCTION — INCREASING FIRE HAZARD AND ENHANCING INSURANCE RATE.

The mere fact that the erection of a building near to or adjacent to that of another will increase the fire hazard or enhance the insurance rate on such other building is not of itself ground to enjoin the erection as for the prevention of a nuisance.

7. NUISANCE ⨪61—ABATEMENT OR INJUNCTION—UNSIGHTLY BUILDING.

That buildings or improvements are ugly or unsightly or objectionable to the æsthetic tastes of complainants is not sufficient ground for abatement or injunction as a nuisance.

⨪For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

8. WATERS AND WATER COURSES ⚖➝118—"DIVERSION OF NATURAL FLOW OF SURFACE WATER"—STATUTE.

That the erection of a building, or an excavation therefor, may divert slightly the water falling on the lot or lots to be used in connection with the building, does not constitute a diversion of the natural flow of the surface water as prohibited by Acts 34th Leg. (1st Called Sess.) c. 7.

9. NUISANCE ⚖➝75—ABATEMENT AND INJUNCTION—SUFFICIENCY OF ALLEGATION.

The allegation of a petition for injunction against the erection of buildings for a lumber yard as a nuisance as to the likelihood of diseases being brought into and kept within the yard, asserted merely a probability, or an uncertain contingency, and was insufficient to invoke injunctive relief.

10. NUISANCE ⚖➝75 — ABATEMENT AND INJUNCTION—PLEADING—EVIDENCE.

In suit to enjoin the erection of lumber yard buildings as a nuisance, the general allegation of the petition that the yard would constitute a nuisance did not justify the admission of testimony, over defendant's objections, that a lumber yard would draw flies, rats, and cockroaches, and invite tramps, and that the odors, dust, and noise from the yard would be objectionable to residents in the vicinity.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Suit by R. G. Scheurrer and others against C. D. Shamburger. From judgment perpetuating temporary injunction, defendant appeals. Judgment reversed, and cause remanded.

Nicholson & Fitzgerald, of Jacksboro, for appellant. T. R. Boone, of Wichita Falls, for appellees.

BUCK, J. R. G. Scheurrer and other citizens having their homes and owning property in the Billevue addition to the city of Wichita Falls filed their petition in the Seventy-Eighth district court to enjoin C. D. Shamburger from erecting, constructing, and maintaining a lumber yard on certain described lots in the near proximity to petitioners' residences and property. On the presentation of the petition a temporary injunction having been granted, the defendant moved the court to dissolve the injunction for want of equity in the bill. Upon a hearing before the court the motion to dissolve was overruled, and the temporary injunction theretofore granted was perpetuated. Defendant has appealed.

[1] The evidence introduced by the plaintiffs took rather a wide range, and in many instances went beyond the allegations contained in the petition, and several assignments are directed to the admission of such testimony. But plaintiffs' cause of action must rest upon the allegations contained in their petition, and the judgment rendered cannot be sustained by evidence introduced over the objections of defendant where such evidence tended to establish facts and conditions which the petition did not allege. The petition alleged that a lumber yard erected and maintained in the vicinity, which was claimed to be a residential district, and upon the lots owned by the defendant and upon which he proposed to build and maintain a lumber yard, would constitute a nuisance. Plaintiffs alleged that they were the owners of certain lots in the residence district of Wichita Falls, and had their residence and homes on said lots; that said Billevue addition was formed for the purpose of building residences and had been used as a residence district for some ten years; that the plaintiffs had certain key rate of insurance to pay on their residences and homes and buildings situated on the lots they were occupying and using, and that by the erection and maintenance of the lumber yard in question the fire hazard to said buildings would be increased and their rate of insurance enhanced; that plaintiffs had reason to believe and did believe that said defendant was going to erect on the lots owned by him, adjacent and lying next to plaintiff's homes and places of residence, unsightly, unseemly, and ugly buildings, and structures; that defendant would excavate and fill in at different portions of said lot to such an extent that he would change the flow of the surface water that naturally flows across said premises, and would cause same to accumulate on plaintiff's lots and premises; that defendant was threatening to open up a lumber yard where all kinds of inflammable material would be kept "and where all kinds of diseases would likely be brought and kept around said yard"; that said lumber yard would "be erected and maintained in such a manner as that same will be a nuisance to all of these plaintiffs and the surrounding neighborhood, and that said business so threatened by the defendant to be erected and maintained on his said lots * * * will be a nuisance to these plaintiffs and the entire community thereabout; that the establishment and maintenance of said lumber yard would work an irreparable injury to the plaintiffs."

Without reference to the testimony introduced or the answer of the defendant filed in the case, we will first consider the question of the sufficiency of the petition on its face to invoke the equitable powers of the trial court. Wood's Law of Nuisances, § 1, defines a nuisance, in its legal sense, as:

"That class of wrongs that arise from the unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, or from his own improper, indecent, or unlawful personal conduct, working an obstruction of or injury to a right of another or of the public, and producing such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage."

The test of what constitutes an actionable nuisance, one that may be enjoined or abated, is defined by the same author on page 3 of his work (second edition) in the following language:

"It is not every use of one's property which works an injury to the property of another that creates a nuisance. Injury and damage are es-

sential elements of a nuisance, but they may both exist as the result of an act or thing, and yet the act or thing producing them not be a nuisance; for, as has been before stated, every person has a right to the reasonable enjoyment of his property, and so long as the use to which he devotes it violates no rights of another, however much damage others may sustain therefrom, his use is lawful, and it is 'damnum absque injuria.' "

[2, 3] A "nuisance per se" or a "nuisance at law" is an act, thing, or omission, or use of property which in and of itself is a nuisance, and hence not permissible or excusable under any circumstances. A "nuisance accidens" or "a nuisance in fact" is one which becomes a nuisance by reason of circumstances and surroundings. 3 Words and Phrases, p. 661; 29 Cyc. 1153. The pursuit of a lawful business in a lawful way cannot be said to be a nuisance per se, and hence in the absence of some statutory enactment limiting the right to conduct a lumber yard within certain defined districts it cannot be said that the maintenance of a lumber yard is a nuisance per se.

Omitting the general allegation that the lumber yard as contemplated would be a nuisance, which allegation would be rather a conclusion of the pleader than a statement of a fact, the grounds for injunction presented in plaintiff's petition are: (1) That the erection and maintenance of the lumber yard would raise the rate of insurance on plaintiffs' residences and property; (2) that defendant would erect on his lots, in connection with his lumber yard, buildings that were unseemly and unsightly; (3) that he would make excavations which would cause the change of the natural flow of the surface water and cause the said water to flow on plaintiffs' premises; (4) that defendant was threatening to open up a lumber yard "where all kinds of inflammable material would be kept, and where all kinds of disease is likely to be brought and kept around said yard."

While it has been held that it is a nuisance for a person to erect a building in the vicinity of the buildings of another, and to negligently and carelessly carry on a business there that exposes the property of the other person to loss or damage from fire (Wood on Nuisances, § 147, p. 159), yet such injury to the property of the other person is abatable as a nuisance because of the negligence and carelessness shown in the manner of carrying on such business. In the case cited by the author in support of the text the defendant erected a building with a thatched roof, and used it as a smith's forge in the immediate vicinity of plaintiff's residence and other thatched houses. The sparks falling upon the roofs from the chimney constantly exposed the plaintiff's property to damage from fire. The court restrained the defendant from using his building for the purpose.

"But in order to render a building a nuisance, by reason of the exposure of other buildings to danger from fire, the hazardous character of the business must be unmistakable, the danger imminent, and the use of such an extraordinary and hazardous character as to leave no doubt of the nuisance. The mere fact that the business carried on there is of a hazardous character, and largely increases the rates of insurance upon surrounding property, is not sufficient; it must appear not only that the business or use to which the building is applied is hazardous, but also, that it is conducted in such a careless manner, or in such a locality, as to make injurious results probable." Wood's Law of Nuisances, § 148.

In Duncan v. Hayes, 22 N. J. Eq. 25, the plaintiff, among other grounds, urged that the defendant should be enjoined from erecting a steam planing and sawmill, because it exposed her buildings to fire, and largely increased the rates of insurance upon property in the vicinity. In denying the writ, the court said:

"I know of no precedent for an injunction against any business on account of an increased risk from fire to the adjoining buildings."

[4-6] This announcement by the New Jersey court, however, should not be understood to mean that because of the nature of the business, the character of the surrounding buildings, and the manner in which the business is conducted, especially if it be shown to be conducted in a negligent and careless manner with reference to fire hazards, and unnecessary and unreasonable danger from fire is created, an injunction would not lie. But cases of this character must necessarily be rare, and the allegation and proof of the imminence and probability of the danger from fire clear and unmistakable. The diminution of value caused to plaintiff's property by reason of the erection of a building, or the use of property by another, is not sufficient to justify an injunction. Wood on Nuisances, § 3, and Dunn v. City of Austin, 77 Tex. 139, 11 S. W. 1125. Nor do we think the mere fact that the erection of a building near to or adjacent to that of another would increase the fire hazard or enhance the insurance rate on such other building would itself be ground for injunction; and as to this feature we do not believe that plaintiffs alleged sufficient grounds to invoke the relief for which they prayed.

[7] We find no authority for the contention that merely because buildings or improvements are ugly or unsightly, or objectionable to the æsthetic tastes of complainants, that a sufficient ground for abatement or injunction is presented. As is said in 29 Cyc. 1190, § D, subd. 2:

"The injury or annoyance which warrants relief against an alleged nuisance must be of a real and substantial character, and such as impairs the ordinary enjoyment, physically, of the property within its sphere; for if the injury or inconvenience be merely theoretical, or if it be slight or trivial, or fanciful; or one of mere delicacy or fastidiousness, there is no nuisance in a legal sense. Thus the law will not declare a thing a nuisance because it is unsightly or disfigured, because it is not in a proper or suitable condition, or because it is unpleasant to the eye and a violation of the rules of propriety and good taste,.

for the law does not cater to men's tastes or consult their convenience merely, but only guards and upholds their material rights, and shields them from unwarrantable invasion."

The same rule is laid down in Wood's Law of Nuisances, § 7, pp. 15 and 16, in the following words:

"The law should not and does not deal with trifles. The maxim, 'De minimis non curat lex,' is applied in proper cases. Therefore the law will not declare a thing a nuisance because it is unpleasant to the eye, because all the rules of propriety and good taste have been violated in its construction, nor because the property of another is rendered less valuable, nor because its existence is a constant source of irritation and annoyance to others. No fanciful notions are recognized. It does not pander to men's tastes, nor consult their mere convenience. It simply guards and upholds their material rights, and shields them from unwarrantable invasion. It recognizes no distinction in classes, ranks, or conditions of life, but measures out the same even and exact justice to all. While it enforces with rigid exactness the principles of that time-honored maxim of the law, borrowed from the gospel rule, 'Sic utere aliunum non lædas,' yet it gives it a reasonable application, and applies it only to those instances where the damage resulting arises from a use of property in such a manner as violates a legal right of another."

It might be a source of irritation and extreme annoyance to the owner of a beautiful mansion to have his neighbor build a lowly log cabin on an adjacent lot, and the value of the rich man's palace might be depreciated thereby and the pleasure in its use as a home be largely circumscribed, yet equity will not, by reason of such facts, restrain the building of the humble cottage to provide a shelter and a home for the poor man's family. The absence of beauty of architecture will not constitute a structure a nuisance.

[8] As to the allegation that the erection and maintenance of a lumber yard would divert the natural flow of the surface water, there is no contention made in the petition, nor is there any evidence to show, that the lots proposed to be used for the lumber yard are in the bed of a natural water course. In fact, both the pleadings and the evidence, including the plat introduced in evidence, exclude such an assumption. Ninth street lies in front of the Shamburger lots, and the several residences of at least three of the plaintiffs are on the right, the left, and at the rear, respectively, of such lots. The fact that the erection of a building, or the excavation therefor, may divert slightly the water falling on the lot or lots to be used in connection with the building, certainly would not constitute a diversion of the natural flow of the surface water as inhibited by Acts 34th Leg. 1st Called Sess. pp. 17 and 18. We do not think that statute, referred to and relied on by appellee, has any reference to the case and condition here presented.

[9] As to the asserted ground that the lumber yard would be a place (a) "where all kinds of inflammable material would be kept," and (b) "where all kinds of disease is likely to be brought and kept," we think it is sufficient to say that the presence of inflammable material in the proposed lumber yard was evidently charged and relied on to show that the fire hazard would be increased. What we have said heretofore we think sufficiently disposes of this question. The allegation as to the likelihood of disease, being "brought and kept" into and within the lumber yard only asserts a probability or an uncertain contingency, and is, therefore, insufficient to invoke injunctive relief. To be sufficient, the allegations must assert with a reasonable certainty that the condition relied on to constitute the premises or structure a nuisance will ensue. Dunn v. City of Austin, 77 Tex. 139, 11 S. W. 1125. The case of Moore et al. v. Coleman et al., 185 S. W. 936, by this court, is cited by the appellee to sustain the sufficiency of the allegation now under discussion. But in that case the petition alleged positively and definitely that the cotton gin proposed to be erected would produce loud noises, and cause clouds of lint, dust, sand, and dirt to be deposited in complainants' homes, yards, and church houses, etc. The allegation in the instant case falls far short of those in the cited case in this respect.

From what we have heretofore said, it follows, as we view it, that the petition itself was insufficient to authorize the trial court to grant even the preliminary injunction, and that the motion to dissolve, irrespective of the testimony introduced, should have been granted. We think appellant's general demurrer should have been sustained. Hence we sustain appellant's second assignment directed to the alleged error of the trial court in overruling such general demurrer.

[10] While there was considerable evidence introduced by plaintiffs to show that a lumber yard would draw flies, rats, and cockroaches, and invite tramps, and that the odors, dust, and noise from such lumber yard would be very objectionable to the plaintiffs and other citizens in that vicinity, yet none of these constitute the grounds alleged by plaintiffs in their petition, and we do not think that the general allegations in the petition contained that the lumber yard would constitute a nuisance justified the admission of such testimony over the objections of defendant. The fourth assignment is directed to the admission of testimony of this character, and we believe that the court erred in so admitting it over objection.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded.