Opinion filed August 21, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed August 21,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00074-CV 

                                                     __________

 

                                      DALE
RANKIN ET AL, Appellants

 

                                                                             v.

 

                                              FPL ENERGY,
LLC ET AL, Appellees

 



 

                                                On
Appeal from the 42nd District Court 

 

                                                             Taylor
County, Texas

 

                                                       Trial
Court Cause No. 46138-A

 



 

                                                                   O
P I N I O N








 Several
individuals and one corporation[1] (Plaintiffs) filed
suit against FPL Energy, LLC; FPL Energy Horse Hollow Wind, LP; FPL Energy
Horse Hollow Wind, LP, LLC; FPL Energy Horse Hollow Wind GP, LLC; FPL Energy
Callahan Wind Group, LLC; and FPL Energy Callahan, LP (FPL).[2] 
Plaintiffs sought injunctive relief and asserted public and private nuisance
claims relating to the construction and operation of the Horse Hollow Wind Farm
in southwest Taylor County.  FPL filed a motion for partial summary judgment
directed at Plaintiffs=
nuisance claims, and the trial court granted it in part dismissing Plaintiffs= claims to the extent they
were based on the wind farm=s
visual impact.  Plaintiffs=
remaining private nuisance claim proceeded to trial.  The jury found against
Plaintiffs, and the trial court entered a take-nothing judgment.

I.
Issues on Appeal

Plaintiffs
attack the trial court=s
judgment with three issues.  They contend that the trial court erred by
granting FPL=s motion
for partial summary judgment, that the trial court erred by excluding their
fact rebuttal witnesses, and that the trial court erred by excluding expert
rebuttal testimony.  FPL asserts one cross-issue, contending that the trial
court erred when it did not assess all taxable costs against Plaintiffs.

                                                                     II. 
Analysis

A. 
FPL=s Motion
for Partial Summary Judgment.

FPL
asked the trial court to dismiss Plaintiffs=
public and private nuisance claims contending that Plaintiffs could not assert
a nuisance claim based upon the wind farm=s
aesthetical impact and that Plaintiffs=
deposition testimony precluded their remaining nuisance claims.  The trial
court granted the motion in part and dismissed APlaintiffs= claims of public and
private nuisance asserted in whole or in part on the basis of any alleged
aesthetic impact of [FPL=s]
activities.@  The
trial court later included an instruction in the jury charge that excluded
their consideration of the wind farm=s
aesthetic impact.[3]

1.  Standard of Review.








Plaintiffs
characterize FPL=s
motion for summary judgment as a motion on the pleadings. FPL, however,
attached twenty-one exhibits to its motion and utilized this evidence to define
the issues.  We will, therefore, treat it as a traditional motion for summary
judgment and will apply the well-recognized standard of review.  Questions of
law are reviewed de novo.  St. Paul Ins. Co. v. Tex. Dep=t of Transp., 999
S.W.2d 881, 884 (Tex. App.CAustin
1999, pet. denied).  To determine if a fact question exists, we must consider
whether reasonable and fair-minded jurors could differ in their conclusions in
light of all the evidence presented.  Goodyear Tire & Rubber Co. v.
Mayes, 236 S.W.3d 754, 755 (Tex. 2007).  We must consider all the evidence
in the light most favorable to the nonmovant, indulging all reasonable
inferences in favor of the nonmovant, and determine whether the movant proved
that there were no genuine issues of material fact and that it was entitled to
judgment as a matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548-49 (Tex. 1985). 

2. Texas Nuisance Law.

 Texas
law defines Anuisance@ as Aa condition that substantially interferes with
the use and enjoyment of land by causing unreasonable discomfort or annoyance
to persons of ordinary sensibilities.@ 
Schneider Nat=l
Carriers, Inc. v. Bates, 147 S.W.3d 264, 269 (Tex. 2004).  Nuisance claims
are frequently described as a Anon-trespassory
invasion of another=s
interest in the use and enjoyment of land.@ 
See, e.g., GTE Mobilnet of S. Tex. Ltd. P=ship v. Pascouet, 61 S.W.3d 599, 615 (Tex.
App.CHouston [14th
Dist.] 2001, pet. denied).[4]  But despite
this exclusionary description, in some instances an action can be both a
trespass and a nuisance.  See, e.g., Allen v. Virgina Hill Water Supply
Corp., 609 S.W.2d 633, 636 (Tex. Civ. App.CTyler
1980, no writ) (continuing encroachment upon the land of an adjoining owner by
either erecting or maintaining a building without any right to do so is a
trespass and a private nuisance).








In
practice, successful nuisance actions typically involve an invasion of a
plaintiff=s property
by light, sound, odor, or foreign substance.  For example, in Pascouet,
floodlights that illuminated the plaintiffs=
backyard all night and noisy air conditioners that interfered with normal
conversation in the backyard, that could be heard indoors, and that interrupted
plaintiffs= sleep
constituted a nuisance.  61 S.W.3d at 616.  In Bates, the court noted
that foul odors, dust, noise, and bright lights could create a nuisance.  147
S.W.3d at 269.  In Lamesa Coop. Gin v. Peltier, 342 S.W.2d 613 (Tex.
Civ. App.CEastland
1961, writ ref=d
n.r.e.), a cotton gin=s
operations were a nuisance because of its loud noises and bright lights that
could be seen and heard on plaintiff=s
property and because of the dust, lint, and cotton burrs that would be carried
there.

Texas
courts have not found a nuisance merely because of aesthetical-based
complaints.  In Shamburger v. Scheurrer, 198 S.W. 1069 (Tex. Civ. App.CFort Worth 1917, no writ),
the defendant began construction of a lumberyard in a residential
neighborhood.  Neighboring homeowners filed suit and contended that the
lumberyard would be unsightly, unseemly, and have ugly buildings and
structures.  The court held that this did not constitute a nuisance, writing:

The injury or
annoyance which warrants relief against an alleged nuisance must be of a real
and substantial character, and such as impairs the ordinary enjoyment,
physically, of the property within its sphere; for if the injury or
inconvenience be merely theoretical, or if it be slight or trivial, or
fanciful, or one of mere delicacy or fastidiousness, there is no nuisance in a
legal sense.  Thus the law will not declare a thing a nuisance because it is
unsightly or disfigured, because it is not in a proper or suitable condition,
or because it is unpleasant to the eye and a violation of the rules of
propriety and good taste, for the law does not cater to men=s tastes or consult their
convenience merely, but only guards and upholds their material rights, and
shields them from unwarrantable invasion.

 

Id. at
1071-72.  In Dallas Land & Loan Co. v. Garrett, 276 S.W. 471, 474
(Tex. Civ. App.CDallas
1925, no writ), the court found that a garage being built for residents of an
apartment complex was not a nuisance because A[m]atters
that annoy by being disagreeable, unsightly, and undesirable are not nuisances
simply because they may to some extent affect the value of property.@  In Jones v.
Highland Mem=l
Park, 242 S.W.2d 250, 253 (Tex. Civ. App.CSan
Antonio 1951, no writ), the court held that the construction of a cemetery on
adjacent property did not constitute a nuisance, noting: AHowever cheerless or
disagreeable the view of the cemetery in question may be to appellees, and no
matter what unpleasant or melancholy thoughts the same may awaken, no reason is
thereby shown why appellants should be restrained from making such use of their
property.@

3.  Plaintiffs=
Nuisance Claim.








Plaintiffs
advance several arguments why this caselaw does not preclude their private
nuisance action.  First, they argue that aesthetics may be considered as one of
the conditions that creates a nuisance.  Plaintiffs concede that, if
their only complaint is subjectively not liking the wind turbines= appearance, no nuisance
action exists.  But, they contend that the jury was entitled to consider the
wind farm=s visual
impact in connection with other testimony such as: the turbines= blinking lights, the
shadow flicker affect they create early in the morning and late at night, and
their operational noises to determine if it was a nuisance.  Second, they note
that nuisance law is dynamic and fact-specific; therefore, they contend that
older case holdings should not be blindly followed without considering intervening
societal changes.  Third, nuisance claims should be viewed through the prism of
a person of ordinary sensibilities and caselaw involving unreasonable
plaintiffs asserting subjective complaints should be considered accordingly.

FPL
responds that the trial court ruled correctly because no Texas court has ever
recognized a nuisance claim based upon aesthetical complaints and notes that,
in fact, numerous courts have specifically rejected the premises behind such a
claim.  See, e.g, Dallas Land & Loan, 276 S.W. at 474; Shamburger,
198 S.W. at 1071 (Athe
law will not declare a thing a nuisance because . . . it is unpleasant to the
eye@).  FPL argues
that sound public policy supports such a rule because notions of beauty or
unsightliness are necessarily subjective in nature and that giving someone an
aesthetic veto over a neighbor=s
use of his land would be a recipe for legal chaos.  Finally, FPL argues that
the wind farm does not prevent any of the plaintiffs from using their property
but at most involves an emotional reaction to the sight of the wind turbines
and contends that an emotional reaction alone is insufficient to sustain a
nuisance claim.

When
FPL moved for summary judgment, Plaintiffs presented affidavits from the
plaintiffs to establish that the wind farm was a nuisance.  Plaintiffs= affidavits personalize
individual objections to the wind farm=s
presence and to the use of wind turbines for generating electricity
commercially.  They also express a consistent theme:  the presence of numerous
400-foot-tall wind turbines has permanently and significantly diminished the
area=s scenic beauty
and, with it, the enjoyment of their property.  Some Plaintiffs, such as Linda
L. Brasher, took issue with the characterization of her complaint as just
aesthetics.  She acknowledged not liking the turbines= looks but contended that they had a larger
impact than mere appearance.  Brasher stated that she and her husband had
purchased their land to build a home and to have a place Afor strength, for rest, for
hope, for joy, for security B
for release.@  They
had plans for building and operating a small bed and breakfast but cancelled
those plans in response to the wind farm.  Brasher characterized the presence
of the wind farm as Athe
death of hope.@








Plaintiffs= summary judgment evidence
makes clear that, if the wind farm is a nuisance, it is because Plaintiffs= emotional response to the
loss of their view due to the presence of numerous wind turbines substantially
interferes with the use and enjoyment of their property.  The question, then,
is whether Plaintiffs=
emotional response is sufficient to establish a cause of action.  One Texas
court has held that an emotional response to a defendant=s lawful activity is insufficient.  Maranatha
Temple, Inc. v. Enterprise Products Co., 893 S.W.2d 92 (Tex. App.CHouston [1st Dist.] 1994,
writ den=d), involved
a suit brought by a church against the owners and operators of companies
involved in an underground hydrocarbon storage facility.  The church=s claims included a
nuisance action.  The trial court granted summary judgment against the church. 
Id. at 96.  The question before the Houston First Court was whether a
nuisance action could exist when the only claimed injury was an emotional
reaction to the defendants=
operations.  The court found that a nuisance could occur in one of three ways: 
(1) by the encroachment of a physically damaging substance;[5]
(2) by the encroachment of a sensory damaging substance;[6]
and (3) by the emotional harm to a person from the deprivation of the enjoyment
of his or her property, such as by fear, apprehension, offense, or loss of
peace of mind.  Id. at 99.  The court noted that nuisance claims are
subdivided into nuisance per se and nuisance in fact.[7] 
Id. at 100.  Because the operation of the storage facility B just like FPL=s wind farm B was lawful, it could not
constitute a nuisance per se.[8]  This last
factor was critical.  The court recognized that no case or other authority specifically
gives a nuisance-in-fact cause of action based on fear, apprehension, or other
emotional reaction resulting from the lawful operation of industry and affirmed
the summary judgment.  893 S.W.2d at 100 & n.6.[9]








Plaintiffs
do not contend that FPL=s
operations are unlawful but minimize this factor by arguing that even a lawful
business can be considered a nuisance if it is abnormal and out of place in its
surroundings.  Plaintiffs are correct that several Texas courts have recited
this general principle; but, in each of the cases cited by Plaintiffs, the
nuisance resulted from an invasion of the plaintiff=s property by flooding,[10]
flies,[11] or odors.[12] 
We cannot, therefore, agree with Plaintiffs that merely characterizing the wind
farm as abnormal and out of place in its surroundings allows a nuisance claim
based on an emotional reaction to the sight of FPL=s wind turbines.

We
do not minimize the impact of FPL=s
wind farm by characterizing it as an emotional reaction.  Unobstructed sunsets,
panoramic landscapes, and starlit skies have inspired countless artists and
authors and have brought great pleasure to those fortunate enough to live in
scenic rural settings.  The loss of this view has undoubtedly impacted Plaintiffs. 
A landowner=s view,
however, is largely defined by what his neighbors are utilizing their property
for.  Texas caselaw recognizes few restrictions on the lawful use of property. 
If Plaintiffs have the right to bring a nuisance action because a neighbor=s lawful activity
substantially interferes with their view, they have, in effect, the right to
zone the surrounding property.  Conversely, we realize that Plaintiffs produced
evidence that the wind farm will harm neighboring property values and that it
has restricted the uses they can make of their property.  FPL=s development, therefore,
could be characterized as a condemnation without the obligation to pay damages.








Texas
caselaw has balanced these conflicting interests by limiting a nuisance action
when the challenged activity is lawful to instances in which the activity
results in some invasion of the plaintiff=s
property and by not allowing recovery for emotional reaction alone.  Altering
this balance by recognizing a new cause of action for aesthetical impact
causing an emotional injury is beyond the purview of an intermediate appellate
court.  Alternatively, allowing Plaintiffs to include aesthetics as a condition
in connection with other forms of interference is a distinction without a
difference.  Aesthetical impact either is or is not a substantial interference
with the use and enjoyment of land.[13]  If a jury
can consider aesthetics as a condition, then it can find nuisance because of
aesthetics.  Because Texas law does not provide a nuisance action for
aesthetical impact, the trial court did not err by granting FPL=s motion for partial
summary judgment and by instructing the jury to exclude from its consideration
the aesthetical impact of the wind farm.  Issue One is overruled.

B. 
Plaintiffs=
Rebuttal Witnesses.

FPL
called three witnesses who were not plaintiffs, but who had been in the
vicinity of the wind farm, to describe the noises they heard coming from the
turbines.  Plaintiffs attempted to call three other nonparty neighboring
landowners as rebuttal witnesses in response to this testimony.  FPL objected
that the witnesses had not been disclosed.  The trial court sustained FPL=s objection and excluded
their testimony.  Plaintiffs also attempted to recall their sound expert Paul
Kiteck to rebut testimony by FPL=s
sound expert Robert Damon O=Neal
concerning an EPA publication on sound levels.  FPL objected that this was an
undisclosed opinion.  The trial court sustained FPL=s objection and excluded Kiteck=s testimony.

1.  Standard of Review.  

 
We review a trial court=s
decision to exclude evidence for an abuse of discretion.  Interstate
Northborough P=ship
v. State, 66 S.W.3d 213, 220 (Tex. 2001).  To obtain reversal of a judgment
based on error in the exclusion of evidence, Plaintiffs must show (1) the trial
court did in fact commit error and (2) the error probably resulted in an
improper judgment.  Id.  This usually requires a demonstration that the
judgment turns on the excluded evidence.  Knox v. Taylor, 992 S.W.2d 40,
63 (Tex. App.CHouston
[14th Dist.] 1999, no pet.).  If the evidence is merely cumulative and does not
concern a material issue dispositive of the case, then its exclusion is
harmless error.  Id.  








In
determining whether the trial court abused its discretion, we review the entire
record.  Hooper v. Chittaluru, 222 S.W.3d 103, 107 (Tex. App.CHouston [14th Dist.] 2006,
pet. denied).  We must uphold the trial court=s
evidentiary ruling if there is any legitimate basis for doing so, even if that
ground was not raised below.  See State Bar of Tex. v. Evans, 774 S.W.2d
656, 658 n.5 (Tex. 1989).  Thus, we will examine all bases for upholding the trial
court=s judgment that
are suggested in the record or urged by FPL.

2.  Fact Witnesses.

The
parties strenuously dispute whether Plaintiffs were required to disclose the
three fact witnesses before trial.  We need not resolve this question because
Plaintiffs have shown no harm.  Each plaintiff testified and described for the
jury the noises they heard from the turbines.  Plaintiffs also called a
nonparty landowner, Jamie Lynn Conway.  He too described the noises made by FPL=s wind turbines.  Finally,
Plaintiffs called a sound expert who testified about his sound level
measurements.

Plaintiffs
contend that their case was severely damaged but do not point to any evidence
that the three rebuttal witnesses could have offered that was not previously
presented to the jury.  Because the jury had already heard a number of
individuals who lived in the area describe the noises created by the turbines,
the excluded testimony would have only been cumulative.  The trial court did
not abuse its discretion, and Issue Two is overruled.

3.  Kiteck=s
Rebuttal Testimony.

The
dispute over Kiteck=s
testimony actually arose during Plaintiffs=
case-in-chief.  When Kiteck was called as a witness, FPL objected to his
anticipated testimony contending that he would offer improperly undisclosed
opinions.  The trial court sustained FPL=s
objection and limited Kiteck=s
testimony to previously disclosed opinions.  Plaintiffs made an offer of proof
in response to this ruling.  Kiteck testified that FPL=s expert report referred to an EPA publication
that was known as the ALevels
Document,@ that he was
familiar with it, and that he reviewed it when he learned that FPL was using it
as a sound-level criterion.  Kiteck testified that FPL contended that
55 dB was the applicable noise standard and that this noise level was
originally identified by the EPA as acceptable for the general public.  But,
Kiteck testified that the EPA standard assumed an urban residential environment
and prior experience with the intruding noise.  If applied to rural residential
properties, such as the Plaintiffs=,
the EPA required adjustments to the 55 dB standard.  According to Kiteck,
Appendix D to the Levels Document explained how to adjust the standard to
reflect actual conditions.  Kiteck then illustrated how to apply it in this
case and concluded that the 55 dB standard should be adjusted by twenty points.








FPL
renewed its objection at the conclusion of the offer, contending that it had no
prior notice of this testimony.  Plaintiffs responded that they did provide
notice that Kiteck would evaluate FPL=s
expert opinions and that he would render an opinion based upon any conclusions
expressed in their report.  Plaintiffs, however, did not contend that they
specifically disclosed Kiteck=s
opinions on the proper application of the Levels Document.  The trial court
sustained FPL=s
objection and excluded Kiteck=s
testimony.

FPL=s sound expert, O=Neal, testified that he
used the Levels Document as a guideline to determine that the appropriate noise
standard was 55 dB.  During cross-examination, O=Neal
testified that he did not analyze Appendix D to the Levels Document because it
was not relevant.  He claimed that Appendix D concerned whether people were
likely to complain and not whether a particular sound level would interfere
with speech and other activities.

Kiteck=s testimony was
reconsidered after FPL rested.  Plaintiffs contended that Kiteck could rebut O=Neal=s testimony by explaining why and how Appendix
D applied.  FPL reiterated its objection that this was an undisclosed opinion
and, therefore, inadmissible.  Plaintiffs conceded that Kiteck received FPL=s expert report before
trial, that Kiteck has had a long-standing opinion on the correct application
of the Levels Document, and that it required an expert to testify about the
correct application of the Levels Document.  The trial court expressed concern
about the lack of a pretrial disclosure that Kiteck would criticize O=Neal=s application of the Levels Document and
sustained FPL=s
objection.

The
trial court did not abuse its discretion.  Plaintiffs learned during discovery
that FPL was advocating a 55 dB noise standard and that it claimed this was an
EPA recognized noise level.  Therefore, Plaintiffs knew before trial that, if
they disagreed with this noise level, they would have to rebut FPL=s expert testimony.  
Accordingly, Plaintiffs were obligated to disclose Kiteck=s opinion testimony on the
proper application of the Levels Document, and their failure to do so is
sufficient basis for exclusion.  See Moore v. Mem=l Hermann Hosp. Sys., Inc.,
140 S.W.3d 870, 875 (Tex. App.CHouston
[14th Dist.] 2004, no pet.) (when a party reasonably anticipates the need to
rebut the testimony of an opposing expert, the failure to disclose is not
excused by characterizing the witness as a rebuttal witness).  Issue Three is
overruled.








C.
Taxing Court Costs.

FPL
asked the court to tax all costs against Plaintiffs.  Plaintiffs responded that
good cause existed for taxing costs otherwise because Plaintiffs were required
to respond to groundless motions and to attend unnecessary depositions.  The
trial court asked what the costs were, and they were estimated to be between $30,000
and $40,000.  The trial court made a reference to too many depositions being
taken; but, when it denied FPL=s
request, it stated that good cause existed for taxing the parties with their
own costs because most of the plaintiffs were ordinary working people with no
real money, that making them pay FPL=s
tremendous costs was not right, and that it would unfairly Achill@ Plaintiffs= ability to prosecute an
appeal.  FPL argues that the trial court abused its discretion because
perceived fairness and inability to pay can never constitute good cause.

Trial courts are generally required to tax costs against
the unsuccessful party.  Tex. R.
Civ. P. 31.  But, they have the discretion to tax costs
otherwise for good cause stated on the record.  Tex. R. Civ. P. 141.  The Texas Supreme Court has recognized
that conduct unnecessarily prolonging and obstructing a trial can constitute
good cause.  See Rogers v. Walmart Stores, Inc., 686 S.W.2d 599, 601
(Tex. 1985).  Conversely, the court has held that a party=s emotional distress at
having to pay costs, inability to pay, and a trial court=s perceived fairness do not constitute good
cause.  See Roberts v. Williamson, 111 S.W.3d 113, 124 (Tex. 2003)
(fairness when considering how to apportion the guardian ad litem=s fees could be considered
good cause, but the record must establish more than the trial court=s perception of general
fairness); Furr=s
Supermarkets, Inc. v. Bethune, 53 S.W.3d 375, 378 (Tex. 2001) (emotional
distress at having to pay costs and inability to pay are not good cause).

To determine if the trial court properly exercised its
discretion, we have been instructed to scrutinize the record to determine if it
supports the trial court=s
decision to tax some or all costs against the prevailing party.  Rogers,
686 S.W.2d at 601.  Unless the record demonstrates an abuse of discretion, the
trial court=s
assessment of costs for good cause should not be disturbed on appeal.  Id.
at 601.   In Bethune, the court held that Rule 141=s good cause exception Ais designed to account for
a prevailing party=s
questionable conduct that occurs during litigation, permitting the trial judge
some discretion to reassess costs so that the cost attendant to that conduct is
not visited on an innocent, but losing party.@ 
53 S.W.3d at 378.








The
trial court=s stated
reason for taxing each party with its own costs B
Plaintiffs= inability
to pay B was an
improper one.  The record, however, indicates that this was not the only
possible reason for applying Rule 141.  Plaintiffs= counsel complained that FPL took too many
depositions and that the depositions ran too long.  He noted that FPL deposed
each of the plaintiffs twice B
once before the turbines were constructed and again after their construction. 
He also referenced increased costs for obtaining expedited deposition
transcripts and complained about costs Plaintiffs incurred responding to
groundless motions.

Because
the trial court erred by relying on Plaintiffs=
inability to pay but because the record contains other information that could
support a Rule 141 good cause determination and because the record indicates
that the trial court was concerned about the amount of the costs, we are
remanding this case back to the trial court solely to reconsider the allocation
of taxable costs.  FPL=s
cross-issue is sustained in part.

III. 
Holding

 We
reverse the judgment of the trial court in part and remand the cause for
determination of the allocation of taxable costs.  We affirm the judgment of
the trial court in all other respects.

 

 

RICK STRANGE

JUSTICE

 

August 21, 2008

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]Dale Rankin, Stephanie Rankin, Kenneth G. Lain, Sherri
A. Lain, Dr. Paul Thames, Gail Thames, Jim Blay, Luann Blay, Stephanye Sayles
Taylor, Paula Kinter, Patricia Harvey, Patricia Lapoint, Greg McEachern, Walter
McGee, Debra McGee, Steve Brasher, Linda Brasher, and Convest Corporation.





[2]Plaintiffs also sued the owners of the property upon
which the wind farm was constructed but dismissed them immediately prior to the
start of trial.





[3]The trial court instructed the jury:

 

In determining whether the Defendant(s) have substantially interfered
with the Plaintiffs= use and enjoyment of their property, you may not
consider whether the Plaintiffs are offended, disturbed, or annoyed because of
the way the wind turbine project has affected their landscape, scenery, or the
beauty of the area.  Under the laws of the State of Texas, a condition that
causes aesthetic changes to the view, scenery, landscape, or beauty of an area
is not a nuisance.  The Plaintiffs=
feelings and beliefs about the turbines=
impact on the aesthetic character of the area, including any impact on the
beauty, scenery, landscape, view, or appearance of the area may not be
considered a substantial interference with the use and enjoyment of the
Plaintiffs= property.  Therefore, any emotional or physical damage
to Plaintiffs or any diminished market value caused by aesthetic or sight-based
objections to the condition, if they exist, cannot be a basis for economic or
non-economic damage.





[4]Trespass to real property occurs when a person enters
another=s land without consent.  Wilen v. Falkenstein,
191 S.W.3d 791, 797 (Tex. App.CFort Worth 2006,
pet. denied).  To recover damages, a plaintiff must prove that (1) the
plaintiff owns or has a lawful right to possess real property; (2) the
defendant entered the plaintiff=s land and the
entry was physical, intentional, and voluntary; and (3) the defendant=s trespass caused injury to the plaintiff.  Id.
at 798.





[5]See, e.g., Bible Baptist Church v. City of Cleburne, 848 S.W.2d 826, 829 (Tex. App.CWaco 1993, writ denied) (raw sewage backed up onto
plaintiff=s property).





[6]See, e.g., Bay Petroleum Corp. v. Crumpler, 372 S.W.2d 318 (Tex. 1963) (plaintiffs claimed that
noxious gases from a salt dome harmed them).





[7]A nuisance per se is an act, occupation, or structure
that is a nuisance at all times, under any circumstances, and in any location. 
A nuisance in fact is an act, occupation, or structure that becomes a nuisance
by reason of its circumstances or surroundings.  Freedman v. Briarcroft
Prop. Owners, Inc., 776 S.W.2d 212, 216 (Tex. App.CHouston [14th Dist.] 1989, writ denied).





[8]See Warren v. Premier Oil Ref. Co., 173 S.W.2d 287 (Tex. Civ. App.CEastland 1943, writ ref=d
w.o.m.). 





[9]In Pascouet, the defendant argued that Maranatha
Temple required physical damage to persons or property to establish a
nuisance in fact claim.  The Fourteenth Court characterized the language giving
rise to this argument as dicta and found that an offensive odor could
constitute a nuisance even though no physical damage resulted.  61 S.W.3d at
615.  We agree with the Fourteenth Court.  The presence of bright lights, loud
noises, smoke, soot, foul-smelling gas, etc., if sufficiently extreme, can
create a nuisance even in the absence of any property damage or personal
injury.





[10]See City of Tyler v. Likes, 962 S.W.2d 489 (Tex. 1997).





[11]See Storey v. Cent. Hide & Rendering Co., 226 S.W.2d 615, 618 (Tex. 1950).





[12]See Soap Corp. of Am. v. Balis, 223 S.W.2d 957 (Tex. Civ. App.CFort Worth 1949, writ ref=d
n.r.e.).





[13]We do not hold that aesthetical-based evidence is
inadmissible.  The trial court has wide discretion concerning the admission of
evidence; and, in individual cases, aesthetical information may be relevant for
a variety of purposes.