# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH



### NO.  02-10-00395-CV

EASTERN EXPRESS, LP                                                    APPELLANT

V.

XTO ENERGY, INC.; PERMIAN                                          APPELLEES
LAND COMPANY, A DIVISION OF
DEVONIAN ENTERPRISES, INC.;
AND FRED W. JONES,
INDIVIDUALLY AND/OR D/B/A
DEVONIAN ENTERPRISES, INC.

**AND**

### NO.  02-10-00396-CV

VICKIE ANNE MAKEHAM; STEVEN                                 APPELLANTS
D. NGUYEN, AND WIFE, Y. MINH
NGUYEN; RICK SCIVALLY, AND
WIFE, JENETH SCIVALLY; ROMEO
SUN; AND FLORDELIZA DUE

V.

XTO ENERGY, INC.; PERMIAN                                          APPELLEES
LAND COMPANY, A DIVISION OF
DEVONIAN ENTERPRISES, INC.;
AND FRED W. JONES,
INDIVIDUALLY AND/OR D/B/A
DEVONIAN ENTERPRISES, INC.

**AND**

VELMA ANN MYLES                                                  APPELLANT

V.

XTO ENERGY, INC.; CHESAPEAKE                                     APPELLEES
EXPLORATION COMPANY, LLC; VANTAGE
ENERGY, LLC; TITAN OPERATING, LLC;
QUICKSILVER RESOURCES, INC.;
CARRIZO OIL & GAS, INC.; TRINITY EAST
ENERGY, LLC; PERMIAN LAND COMPANY,
A DIVISION OF DEVONIAN ENTERPRISES,
INC.; FRED W. JONES, INDIVIDUALLY
AND/OR D/B/A DEVONIAN ENTERPRISES,
INC., DALE PROPERTY SERVICES, LLC;
THE CAFFEY GROUP, LLC; FOUR SEVENS
ENERGY CO., LLC; BRYSON KUBA, LP;
LLANO OPERATING CORP.; AND CHEAHA
LAND SERVICES, LLC

----------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellants, mineral owners residing in southeast Arlington, Texas, sued Appellees for breach of contract, promissory estoppel, negligent misrepresentation, fraud, and violations of the Texas Free Enterprise and Antitrust Act of 1983.  The trial court dismissed Appellants' antitrust claims by

---

[1]*See* Tex. R. App. P. 47.4.

granting Appellees' pleas to the jurisdiction and dismissed Appellants' remaining claims by granting Appellees' motions for traditional and no-evidence summary judgment. Appellants contend in eleven issues that the trial court erred by granting the pleas to the jurisdiction and the motions for summary judgment. We affirm.

## II. Background

These cases, consolidated for purposes of briefing and argument, involve mineral owners in southeast Arlington. Southeast Arlington Communities of Texas (SEACTX) is an unincorporated association comprised of homeowners, homeowners' associations, and businesses that formed "to negotiate the best possible oil and gas leases for all participating members." SEACTX negotiated with XTO and other oil and gas companies through the spring of 2008. Linda Razzano, a SEACTX negotiator, informed XTO that SEACTX was negotiating on behalf of each of its members, that each member had the right to lease or not to lease, and that SEACTX was not attempting to negotiate a "community lease."

According to Razzano's summary judgment affidavit, SEACTX and XTO reached an agreement by e-mail on April 24, 2008, concerning the form of the proposed lease to be offered to individual mineral owners, and SEACTX announced the agreement to its members. XTO then leased over 1,000 acres (over 4,000 individual tracts) from individual mineral owners residing within SEACTX. But gas prices dropped significantly in October 2008, and XTO was no

longer willing to acquire additional leases on the terms discussed with SEACTX in April 2008.

Appellants, mineral owners who did not lease with XTO in 2008, subsequently filed suit against Appellees alleging breach of contract, promissory estoppel, negligent misrepresentation, antitrust violations, and other causes of action. Among other relief, Appellants prayed that XTO "be ordered to specifically perform in accordance with the contract terms and issue a check to [Appellants] in the full amount owed for the bonus payment" agreed to with SEACTX in April 2008. Appellants' claims were dismissed following the trial court's orders on Appellees' pleas to the jurisdiction and motions for traditional and no-evidence summary judgment. This appeal followed.

### III. Breach of Contract and Promissory Estoppel

Appellants argue in their second issue that there are genuine issues of material fact concerning their status as third-party beneficiaries of the alleged contract between XTO and SEACTX, and they assert in their eighth issue that genuine issues of material fact remain on each element of their promissory estoppel claim.

### A. Summary Judgment Standards of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the

4

nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168

5

S.W.3d 802, 822 (Tex. 2005)).  We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not.  *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.  *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

## B.  Third-Party Beneficiary

This court recently addressed identical arguments in a substantially similar appeal.  In that case, an unincorporated, nonprofit association called Southwest Fort Worth Alliance (SFWA) negotiated with Vantage Energy, LLC on behalf of mineral interest owners within SFWA.  *Maddox v. Vantage Energy, LLC*, No. 02-11-00210-CV, 2012 WL 407269, at *1 (Tex. App.—Fort Worth Feb. 9, 2012, no pet. h.).  In the opinion, we described the relevant facts as follows:

> Appellants assert that a written contract exists between Vantage and SFWA; Appellants claim the contract consists of a series of approximately eleven emails—and the attachments to those emails, including the uniform oil and gas lease form—that were exchanged between Vantage and an individual acting for SFWA.  Based on the emails and the uniform oil and gas lease form, SFWA publicized that Vantage had "won the bid for endorsement" of SFWA and was SFWA's "preferred and endorsed Natural Gas Developer."  Appellants concede in their brief that SFWA did not possess authority to, and did not, negotiate individual leases for Appellants or for anyone; instead, Appellants claim that the contract

6

between Vantage and SFWA was "a contract for an *endorsement* of Vantage and its offer."

> The uniform oil and gas lease form is a template; it provides blanks for the date of execution of the lease, the name of the lessor, and for the legal description and address of the property covered by the lease. The uniform oil and gas lease form also states that each individual lessor is not obligated to sign the form lease but instead has the right to negotiate his or her own terms with any oil and gas company and individually bears the responsibility of investigating the lease and its terms.

> Vantage began obtaining leases from mineral owners in the SFWA neighborhoods. Between 4,000 and 7,500 leases were obtained; the record does not reflect if these lessors negotiated to modify the uniform oil and gas lease terms or not. Approximately one month later, however, as the price of natural gas fell, Vantage suspended its urban leasing activities. Appellants filed the instant suit, seeking to compel Vantage to offer them an oil and gas lease in accordance with the terms set forth in the uniform oil and gas lease form. Appellants' petition prayed that the court "award Plaintiffs specific performance and give Plaintiffs the opportunity to accept or reject the negotiated lease, as described herein. . . ."

*Id.* (footnotes omitted). Addressing the third-party beneficiary contention in that case, we held that the appellants lacked standing to sue for breach of contract because the purported contract between Vantage and SFWA did not identify the appellants in the purported contract documents in a manner sufficient to overcome the presumption against third-party beneficiary agreements. *Id.* at *3–5.

There are no substantive differences between Appellants and the plaintiffs in our *Maddox* case. Appellants are not named in the documents that they claim constitute the contract with XTO, there is no list of the individual members of SEACTX, and the map included within the documents was—by Appellants' own

7

admission—not accurate at the time XTO and SEACTX allegedly entered into the contract on April 24, 2008.[2] There is also summary judgment evidence that parts of SEACTX had been "heavily leased" by XTO's competitors. Thus, just as we held in *Maddox*, even assuming there was a contract between SEACTX and XTO, there is no intent to directly benefit Appellants as third-party beneficiaries clearly written into or evidenced by the alleged contract documents because Appellants are not sufficiently identified by the alleged contract documents. *See id.* at *4. In addition, Appellants are neither donee beneficiaries nor creditor beneficiaries. As we explained in *Maddox*,

> [T]o date, the law recognizes only two types of third-party beneficiaries: donee beneficiaries and creditor beneficiaries. . . . Appellants are not donee beneficiaries because the performance allegedly promised by Vantage that Appellants seek specific performance of—the offer and execution of a lease in accordance with the terms of the uniform oil and gas lease form—will, when rendered, not come as a pure donation but will be made in exchange for the lease of Appellants' mineral rights. Likewise, Appellants are not creditor beneficiaries because Vantage owed Appellants no legal duty, indebtedness, or contractual obligation. The alleged contract between Vantage and SFWA did not express an intent to confer a benefit on Appellants or an intent that Appellants possess the right to enforce the alleged contract between Vantage and SFWA.

---

[2]In her summary judgment affidavit, Razzano described the map as the "general area" of SEACTX. She also stated that SEACTX grew after the initial contact with XTO and that it was still growing, even in April 2008 when SEACTX and XTO allegedly entered into a contract. Also, on April 14, 2008, Razzano sent XTO a list of more than forty subdivisions and homeowners' associations that were part of SEACTX, but her e-mail stated that she believed this was "almost all of the subdivisions currently under our group," that "[t]here may be more," and that "[w]e also have businesses and a number of churches as well." Razzano's affidavit also states that she told XTO even after April 24 that SEACTX "still had groups that were interested in joining."

8

*Id.* at *5 (citations omitted). We therefore hold that Appellants are not third-party beneficiaries to the contract, if any, between SEACTX and XTO and that they thus lack standing to sue to enforce any such contract. *See id.* We overrule Appellants' second issue.[3]

## C. Promissory Estoppel

Appellants also lack standing to assert a promissory estoppel claim as an independent cause of action. For the reasons explained in our *Maddox* opinion, Appellants are not promisees who can assert promissory estoppel against Appellees because the alleged promise was made only to SEACTX. *See id.* at *7. Because Appellants do not qualify as third-party beneficiaries of the alleged contract with XTO and do not qualify as promisees to whom XTO made any promise, they cannot create liability for XTO or create some promise between themselves and XTO where none exists as a matter of law. *See id.* We thus hold that Appellants lack standing to assert a promissory estoppel cause of action against XTO, and we overrule Appellants' eighth issue.

---

[3]Because we have assumed for purposes of this opinion that a valid, written contract existed between XTO and SEACTX, we need not address Appellants' first, third, fourth, fifth, sixth, or seventh issues in which they contend that there are genuine issues of material fact as to whether there was an enforceable agreement between XTO and SEACTX, that the statute of frauds does not apply to the alleged contract between XTO and SEACTX, and that there are applicable exceptions to the statute of frauds if the doctrine does apply. *See* Tex. R. App. P. 47.1, 47.4.

## IV. Negligent Misrepresentation

In their ninth issue, Appellants contend that there are genuine issues of material fact as to each element of their negligent misrepresentation claims.

Appellants moved for no-evidence summary judgment on Appellants' negligent misrepresentation claims on the ground, among others, that Appellants had no evidence that they "suffered compensable non-benefit-of-the-bargain damages." In their summary judgment responses, Appellants argued that they were entitled to the difference between the value of the leases (including signing bonuses, royalty payments, and lease language) offered by XTO before the offers were withdrawn and the value of the subsequent, inferior lease offers. Appellants did not argue that they expended any money in alleged reliance on XTO's representations.

Relying on a 1981 Texas Supreme Court opinion, Appellants argue that their damages are reliance damages, not benefit-of-the-bargain damages. *See Fretz Constr. Co. v. S. Nat'l Bank of Houston*, 626 S.W.2d 478, 483 (Tex. 1981). The *Fretz* case is inapplicable, however, because it involved only a claim for promissory estoppel, not negligent misrepresentation. *See id.* at 479, 483. Moreover, reliance damages are the out-of-pocket expenditures made in reliance on actions by another party. *Sterling Chem., Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 798 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Appellants have not identified any expenses they incurred in alleged reliance on XTO's representations. Instead, they rely solely on a damage theory that would award

10

them the amounts of money they would have received had they signed mineral lease agreements with XTO. But this is a benefit-of-the-bargain theory, not a reliance theory, and the Texas Supreme Court has unequivocally held that "the benefit of the bargain measure of damages is not available for a claim of negligent misrepresentation." *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998); *see also Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 302 (Tex. App.—Dallas 2009, no pet.) ("A plaintiff cannot recover benefit-of-the bargain damages for negligent misrepresentation; a plaintiff can only recover for out-of-pocket loss.").

Because the damages Appellants seek are not recoverable for a negligent misrepresentation claim, the trial court did not err by granting summary judgment on Appellants' negligent misrepresentation claim. We therefore overrule Appellants' ninth issue.

## V.  Antitrust Claims

Appellants contend in their eleventh issue that they have standing to sue for violations of the Texas Free Enterprise and Antitrust Act and that the trial court therefore erred by granting Appellees' pleas to the jurisdiction on that basis.

### A.  Standard of Review

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether the trial court has subject matter jurisdiction is a question of law that we review de

11

novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002). The determination of whether a trial court has subject matter jurisdiction begins with the pleadings. *Miranda*, 133 S.W.3d at 226. The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See Miranda*, 133 S.W.3d at 226, 228; *City of Fort Worth v. Crockett*, 142 S.W.3d 550, 552 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g).

## B. Discussion

Appellants alleged in their pleadings that they are real property owners in Tarrant County, that their property lies within the boundaries of SEACTX, and that they agreed that SEACTX would negotiate with various oil and gas entities on their behalf for the lease of their property "on the most economically favorable terms that SEACTX could negotiate." Appellants further alleged that they are "persons" as defined by the Texas Free Enterprise and Antitrust Act of 1983 and that "the agreement(s) between [Appellees] constitutes an agreement with the intended purpose and effect of lessening competition in the market to lease lands within the geographic boundaries of the Barnett Shale . . . by keeping prices for bonus payments and royalty payments at an artificially low level."

In *Maranatha Temple, Inc. v. Enterprise Products Co.*, 893 S.W.2d 92, 105 (Tex. App.—Houston [1st Dist.] 1994, writ denied), our sister court affirmed summary judgment on the ground that Maranatha lacked standing to sue for alleged antitrust violations. Maranatha operated a church in Mont Belvieu, Texas. *Id.* at 95. Due to industrial accidents at their hydrocarbon facilities, the defendants decided to purchase residential and church properties adjacent to their hydrocarbon facilities and announced their intention in a press release. *Id.* According to the press release, no home would be within 800 feet of a storage well if all properties within the designated area were purchased. *Id.* Maranatha contended that it should have but did not receive an offer to purchase its property, and it sued the defendants for antitrust violations and several other causes of action. *Id.* at 95–96. Affirming summary judgment for the defendants, the court wrote as follows:

> Whether a plaintiff has standing to bring an antitrust claim is the initial inquiry in antitrust cases. *See Jayco Sys., Inc. v. Savin Business Machs. Corp.*, 777 F.2d 306, 313 (5th Cir. 1985). The issue of standing to bring an antitrust claim is a question of law. *Eagle v. Star–Kist Foods, Inc.*, 812 F.2d 538, 539 (9th Cir. 1987).

> The party bringing an antitrust claim "must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator" in the market. [*Id.*] at 540; *accord Bell v. Dow Chem. Co.*, 847 F.2d 1179, 1183 (5th Cir. 1988) (holding that "consumers and competitors . . . are the parties that have standing to sue"); *see Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 539, 103 S. Ct. 897, 909 (1983) (holding that plaintiff had no antitrust cause of action where it "was neither a consumer nor a competitor" in the market). . . . Maranatha asserts that it was a potential seller of real estate (its own property) in the market; that it "showed an intention to enter the business of selling real estate . . ."

> Maranatha's status as a potential seller of real estate does not make it a competitor of the appellees. The appellees were not sellers of real estate. On the contrary, they were *buying* real estate; hence, Maranatha's complaint that they did not buy *Maranatha's* property. The appellees were not in the business of selling property.
>
> Because Maranatha was neither a consumer of the appellees nor their competitor, Maranatha lacks standing to bring an antitrust claim.

*Id.* at 105. The facts as alleged in Appellants' pleadings in this case are very similar to those involved in *Maranatha*. Appellants are potential lessors or "sellers" of their mineral rights, but they are not Appellees' consumers or competitors.

Rather than attempting to distinguish *Maranatha*, Appellants argue that *Maranatha* does not accurately reflect the law because it allegedly conflicts with federal cases interpreting federal antitrust statutes. But *Maranatha's* requirement that an antitrust plaintiff be a consumer or competitor is consistent with numerous federal court decisions. *See, e.g.*, *Associated Gen. Contractors*, 459 U.S. at 539–40, 103 S. Ct. at 909 (holding union did not have standing because it was, in that case, "neither a consumer nor a competitor in the market in which trade was restrained"); *Norris v. Hearst Trust*, 500 F.3d 454, 466 (5th Cir. 2007) (holding plaintiffs had not suffered an antitrust injury and therefore lacked standing because they were "neither consumers (buyers of advertising, or users of advertising such as subscribers) nor competitors (sellers of advertising) in the relevant market"); *Bell*, 847 F.2d at 1183 (stating that Supreme Court had "articulated the high standing threshold that plaintiffs must cross in the antitrust

14

setting" and that "[r]estraint in the market affects consumers and competitors in the market; as such, they are the parties that have standing to sue"); *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979) (holding claimants who alleged they made retail *purchases* of beef as consumers had standing to assert antitrust claims). *Maranatha* has also been cited by two other Texas appellate courts. *See Roberts v. Whitfill*, 191 S.W.3d 348, 354–55 (Tex. App.—Waco 2006, no pet.); *Sw. Bell Tel. Co. v. Superior Payphones, Ltd.*, No. 13-05-00661-CV, 2006 WL 417423, at *7 n.4 (Tex. App.—Corpus Christi Feb. 23, 2006, pet. dism'd) (mem. op.). Thus, we hold that the trial court did not err by granting Appellees' pleas to the jurisdiction, and we overrule Appellants' eleventh issue.[4]

## VI. Conclusion

Having overruled Appellants' dispositive issues, we render judgment dismissing Appellants' breach of contract and promissory estoppel claims in each case for lack of standing, and we affirm the remainder of the trial court's judgments.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, MCCOY, and GABRIEL, JJ.

DELIVERED: March 29, 2012

---

[4]Given our disposition of Appellants' second, eighth, ninth, and eleventh issues, we need not decide Appellants' tenth issue. *See* Tex. R. App. P. 47.1.